## UNITED STATES DISTRICT COURT
## DISTRICT OF COLORADO

Civil Action No.: 1:23-cv-2093

Jeriyma Hartsfield, Simon Gebru, Mark
Graham, Dakota Helm, Marlon Gosa,
Dominique Gutierrez, Misty McKinney,
and Chris Kline, individually and on
behalf of others similarly situated,

      Plaintiffs,

      v.

Frontier Airlines, Inc., Frontier Airlines
Holding, Inc., Frontier Airlines
Management, Inc., Indigo Partners, LLC,

      Defendants.

---

## CLASS ACTION AMENDED COMPLAINT

---

Plaintiffs Jeriyma Hartsfield, Simon Gebru, Mark Graham, Dakota Helm, Marlon Gosa, Dominique Gutierrez, Misty McKinney, and Chris Kline ("Plaintiffs"), on behalf of themselves and all others similarly situated, file this Class Action Complaint ("CAC") against Defendants Frontier Airlines, Inc., Frontier Airlines Holding, Inc., and Frontier Airlines Management, Inc. (collectively, "Frontier") and Indigo Partners, LLC, (all together, "Defendants"), and in support states the following.

### <u>NATURE OF THE SUIT</u>

1.      This is a class action lawsuit by Plaintiffs on behalf of themselves and all others similarly situated who purchased Defendants' "GoWild! All-You-Can-Fly-Pass"[1] ("GoWild Pass"

---

[1] https://www.flyfrontier.com/deals/gowild-pass/?mobile=true

or "Pass"), that were manufactured, marketed, labeled, distributed, and sold by Defendants. The above-described group of persons who purchased Defendants' Pass is to be referred to as the Putative Class hereinafter.

2.      Plaintiffs bring this action because of Defendants' fraud, false marketing, false advertising, breach of contract, breach of warranty, and breaches of state law consumer protection statutes.

3.      Defendant Frontier is a self-proclaimed budget airline, specializing in "Low Fares Done Right"[2], as documented in its corporate wordmark and website branding.

4.      Through its own marketing, Frontier is seeking out consumers who might be in vulnerable positions financially given its budget friendly marketing.

5.      In firm juxtaposition to the customers of Frontier, exists the wealthy private equity fund Defendant Indigo Partners, LLC ("Indigo"). Indigo is the parent company of Frontier.[3] Along with Frontier, Defendant Indigo owns a litany of self-proclaimed "budget" airlines throughout the globe.[4]

6.      Defendant Indigo truly is a global titan in the arena of budget air travel. Defendant Indigo has specialized in this budgeted arena for nearly two decades and has spent the last five years acquiring various airlines.[5]

7.      Defendants have developed a scheme in which they offer a fraudulent discount. Much like the idea of all-you-can-eat buffet, Defendants offer an all-you-can-fly style of ticket.

---

[2] https://www.flyfrontier.com/
[3] https://centreforaviation.com/data/profiles/airline-groups/indigo-partners
[4] Id.
[5] https://www.mirrorreview.com/airbus-closes-49-5bn-deal-us-investment-firm-indigo-partners/ ;
https://www.aviacionline.com/2022/02/indigo-partners-continues-to-expand-in-america-frontier-airlines-to-acquire-spirit/

This new program, allegedly, allows the budget conscious flyers, energetic travel addicts, and frugal businesspersons to all now fly as much as they want on just one ticket.

8.      As with many things that sound too good to be true, they usually are. Defendants' program amounts to no more than a fraudulent scam. But, unfortunately for consumers, this might be expected. Defendants are currently being sued for fraudulent fees relating to carry on bags.[6] Without delving into too much detail, Defendants have created another scheme in which it tells potential travelers the required sizes for carry on bags, and once at the airport, tells travelers that these bags are too large even if the bags fit in the sizing templates given by Defendant.[7]

9.      Compounding the damages to Plaintiffs and The Putative Class is the fact that Defendants have not offered refunds for their inoperable Passes. In short, Plaintiffs and the Putative Class have purchased a Pass for hundreds of dollars and are now stuck with a pass they cannot use. Given Plaintiffs and the Putative Class's now worthless, inoperable, and nonrefundable tickets, declaratory and injunctive measures are appropriate.

## JURISDICTION AND VENUE

10.      This Court possesses subject-matter jurisdiction to adjudicate the claims set forth herein under the provisions of the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), because (1) the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, (2) the action is a class action, (3) there are members of the Class who are diverse from Defendant, and (4) there are more than 100 class members.

11.      This Court has personal jurisdiction over Defendants Frontier Airlines, Inc., Frontier Airlines Management, Inc., and Frontier Airlines Holdings, Inc. because they have their

---

[6] *Hamad v. Frontier Airlines, Inc.*, Case No. 6:23-cv-1209 (M.D. Fla.)
[7] https://www.9news.com/article/travel/frontier-airlines-class-action-lawsuit/73-30b06c23-332e-4cc3-89e1-7b87a427dfdd

principal place of business located in this judicial district or are registered to do business within this district.

12.     This Court has personal jurisdiction over Defendant Indigo Partners, LLC because they have conducted substantial business in this judicial district, have significant connections in this district in that they are the parent company of other co-defendants, and are registered to do business in this District.

13.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because Defendants are headquartered in this district, transact business in this district, are subject to personal jurisdiction in this district, and therefore are deemed to be citizens of this district. Given that Defendant Frontier's headquarters are located within this district, the design, approval, and distribution process of the Passes occurred or originated within this District. Additionally, Defendants have advertised in this district and have received substantial revenue and profits from its sales of Passes in this district; therefore, a substantial part of the events and/or omissions giving rise to the claims occurred, in part, within this district.

**PARTIES**

A.          **Plaintiffs**

14.     Plaintiff Jeriyma Hartsfield is a resident of Horry County, S.C. Plaintiff lives in Myrtle Beach, S.C. which is located within Horry County.

15.     In November of 2022, Plaintiff Hartsfield purchased a $599 Pass. The Pass's confirmation message stated that Plaintiff Hartsfield would be granted unlimited flights starting May 2, 2023, as evidenced below by a screenshot of Plaintiff Hartsfield's confirmation page:

 **ACCOUNT** | Log In



### Jeriyma Hartsfield

*FRONTIER Miles*™ #:
**90100886458**

Member Status: *Member*

Discount Den Member: **Join now**
GoWild! Pass™ Holder: **Yes**

---

Expiration Date: **05/01/2024**
*pass will automatically renew effective 05/02/2024*

Enrollment Date: **11/17/2022**
*flight availability to book and fly starts 05/02/2023*

Total Payment Amount: **$599.00**

Payment Date: **11/17/2022**

**Terms and Conditions GoWild! Pass™**

Read full terms at https://www.flyfrontier.com/myfrontier/terms-and-conditions/#GoWild!_Pass



16.     Unfortunately, Plaintiff Hartsfield could never use this Pass. This is because Frontier's booking system is inoperable when the Pass is attempted to be used. In more detail, when Plaintiff Hartsfield attempts to use her Pass, the relevant booking year for available dates to use the Pass displays as the year 1904. This ludicrous year value is somewhat laughable at first glance, given that it coincides greatly with the first known human flight in late 1903.[8]

17.      But, this is no fixable glitch on Plaintiff Hartsfield's end, or a simple scroll for valid dates. For weeks on end, she would attempt to book flights, and for weeks on end, she would be stuck looking for flights in the year 1904 as the system never updated.

18.     Plaintiff Hartsfield even called Defendants' helplines but was placed on hold for immense amounts of time. Once relieved by the fact of her call being answered by Frontier, she began down a new runway of heightening frustration as she was told by Frontier that she could not be refunded for her Pass.

19.     Had Plaintiff Hartsfield known of the true nature of this Pass, in that it was a nonrefundable and inoperable Pass, she would not have purchased the Pass. As a result of her purchase of the Pass, Plaintiff Hartsfield has been defrauded of her purchase price, been deprived of her benefit of the bargain, and has been greatly inconvenienced. Further, she has lost the opportunity to travel with some other airlines given that she her budget for flights has been reduced and limited.

---

[8] https://www.grc.nasa.gov/www/k-12/UEET/StudentSite/historyofflight.html#:~:text=The%20first%20manned%20flight%20was,de%20Rozier%20and%20Francois%20Laurent.

6

20. Plaintiff Simon Geru is a resident and citizen of the State of Georgia. Plaintiff Geru paid $799 for his Frontier GoWild Pass in November 2022. While attempting to use the GoWild Pass, Plaintiff Geru was never able to book a return flight and found that entire cities were blocked out after his GoWild Pass purchase. In short, Plaintiff Geru's GoWild Pass never functioned in much the same way as Plaintiff Hartsfield's never functioned.

21. Plaintiff Mark Graham is a resident and citizen of the State of Ohio. Plaintiff Graham paid $499 for his Frontier GoWild Pass in May 2023. Plaintiff Graham has never been able to use the GoWild Pass and encountered the same problems as Plaintiff Hartsfield as noted above.

22. Plaintiff Dakota Helm is a resident and citizen of the State of Virginia. Plaintiff Helm paid approximately $800 for their Frontier GoWild Pass in November 2022. Plaintiff Helm has never been able to use the GoWild Pass and encountered the same problem as Plaintiff Hartsfield and Plaintiff Graham when attempting to use the Wild Pass.

23. Plaintiff Marlon Gosa is a citizen and resident of the State of Illinois. Plaintiff Gosa paid $599 for his Frontier GoWild Pass on November 11, 2022.

24. Plaintiff Dominique Gutierrez is a citizen and resident of the State of Massachusetts. Plaintiff Gutierrez bought three Frontier Wild Passes for $499 each. Plaintiff Gutierrez has never been able to use the GoWild Passes she purchased and she encountered the same problems as Plaintiff Hartsfield, Plaintiff Graham, Plaintiff Helm and Plaintiff Gosa when attempting to use the GoWild Pass.

25. Plaintiff Misty McKinney is a citizen and resident of the State of Illinois. Plaintiff McKinney paid $599 for her Frontier GoWild Pass in November 2022. Plaintiff McKinney has not used the GoWild Pass and she also notes that when attempting to use the GoWild Pass, fees

are still calculated and she also notes that return flights are never free either. Additionally, she has encountered much the same problems as the named Plaintiffs above.

26.     Plaintiff Chris Kline is a citizen and resident of the State of Texas.  Plaintiff Kline paid $599 for his Frontier GoWild Pass.

**B.       Defendants**

27.     Defendant Frontier Airlines, Inc. is a Colorado based airline, with its principal place of business at 4545 Airport Way, Denver, CO 80239.

28.     Defendant Frontier Airlines Holding, Inc. is a Delaware holding corporation that owns or controls or holds Frontier Airlines.  Frontier Airlines Holding, Inc. is registered to do business in Colorado and has its principal place of business located at: 4545 Airport Way, Denver, CO 80239, United States.

29.     Defendant Frontier Airlines Management, Inc. is a Delaware corporation that, based upon investigation and information and belief, manages Defendant Frontier Airlines. Frontier Airlines Holding, Inc. is registered to business in Colorado has its principal place of business located at: 4545 Airport Way, Denver, CO 80239, United States.

30.     Defendant Indigo Partners, LLC is an Nevada based private equity firm that owns Frontier Airlines. Defendant Indigo Partners, LLC's principal place of business is: 2525 E. CAMELBACK ROAD, SUITE 900, PHOENIX, AZ, 85016.

31.     Defendants have a history of fraudulent behavior of dealing with consumers, as they overcharge passengers for bag fees.[9]

---

[9] https://www.9news.com/article/travel/frontier-airlines-class-action-lawsuit/73-30b06c23-332e-4cc3-89e1-7b87a427dfdd

32.     This bag fee debacle grew to viral status on the app TikTok, with some videos garnering over a million views.[10]

33.     Defendant Indigo Partners, LLC is a massively well-endowed private equity firm based out of Phoenix, AZ but originally incorporated in Nevada.[11]

34.     Defendant Indigo owns several low-budget, or ultra-low-budget airlines.[12]

35.     From 2017 to the present, Defendant Indigo has made several large business moves as to consolidate and monopolize the budget air travel industry.[13]

**FACTUAL ALLEGATIONS**

36.     When Plaintiffs attempted to purchase flights while using the GoWild Pass, no valid flights appeared.

37.     In more detail, Plaintiff's viewing experience within Defendants' booking system was horribly inoperable, as Defendants' system only displayed flights for the year 1904 when formatted to show flights available for Plaintiff's Pass.

38.     Upon information and belief, several other purchasers other the "All You Can Fly Pass" experience similar difficulties in booking flights.

39.     After readjusting the settings contained within Defendants' booking system to no avail, several Plaintiffs reached out to Defendants' customer service division.

40.     Plaintiffs spent hours upon hours on the phone with Defendants' customer service representatives, and once again, to no avail.

---

[10] https://www.tiktok.com/discover/class-action-lawsuit-frontier
[11] https://mergr.com/indigo-partners-mergers-acquisitions
[12] https://www.flightglobal.com/dubai-indigo-partners-signs-mou-for-430-a320neos/126155.article
[13] Id.

41.     Plaintiffs were directly informed that refunds were not available for the GoWild Pass, even though the Passes were inoperable.

42.     To reiterate, this Pass cost Plaintiffs hundreds of dollars and provided them with no flights, the direct opposite of the advertised unlimited flights.

43.     Plaintiffs would not have purchased this Pass had they  known of the true nature of Defendants' Pass.

44.     Plaintiffs were deprived of the  benefit of their bargain and were monetarily harmed by Defendants' Pass.

45.     As documented above, Defendants have a noted history of defrauding customers through their deceptive fees and charges.

## CLASS ALLEGATIONS

46.     Plaintiffs bring this action on behalf of themselves and all others similarly situated class members (the "Class") pursuant to Rule 23(a) and Rule 23 (b)(3) of the Federal Rules of Civil Procedure. Plaintiffs seek class certification on behalf of the class defined as follows ("the Nationwide Class").

**Nationwide Class**
All persons in the United States who purchased an "All-You-Can-Fly" Pass sold by Defendants from 2020 to the Present.

47.     Alternatively, Plaintiffs bring this action on behalf of themselves and all other similarly situated consumers pursuant to Rule 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure and seeks certification of the following class (South Carolina Sub-Class):

**South Carolina Sub-Class**
All persons in South Carolina who purchased an "All-You-Can-Fly" Pass sold by Defendant from 2020 to the Present.

48.     Excluded from the Classes are any Defendants, any parent companies, subsidiaries, and/or affiliates, officers, directors, legal representatives, employees, co-conspirators, all governmental entities, and any judge, justice or judicial officer presiding over this matter.

49.     Together, the above-mentioned South Carolina Subclass and Nationwide shall be collectively referred to as the "Classes" or "Class". Proposed Members of said Classes will be referred to as "Class Members", or otherwise referenced as "members of the Class".

50.     **Numerosity:** The members of the Class are so numerous that joinder of all members of the Class is impracticable. Plaintiffs are informed and believe that the proposed Class/Sub-Classes contains thousands of purchasers who have been damaged by Defendants' conduct as alleged herein. The precise number of Class members is unknown to Plaintiffs at this time.

51.     **Typicality:** Plaintiffs' claims are typical to those of all Class members because members of the Class are similarly injured through Defendants' uniform misconduct described above and were subject to Defendants' deceptive claims.  Plaintiffs are advancing the same claims and legal theories on behalf of themselves and all members of the Class and Sub-Class.

52.     **Commonality:** Plaintiffs' claims raise questions of law and fact common to all members of the Class, and they predominate over any questions affecting only individual Class members. The claims of Plaintiffs and all prospective Class members involve the same alleged defect. These common legal and factual questions include the following:

   a.   Whether Defendants' Passes are defective and/or inoperable;

   b.   Whether Defendants owed a duty of care to Plaintiffs and the Class;

   c.   Whether Defendants knew or should have known that the Passes were defective and/or inoperable;

d.  Whether Defendants wrongfully represent, and continue to represent, that their Passes are operable, thus granting unlimited flights;

e.  Whether Defendants' omissions are true, or are misleading, or objectively reasonably likely to deceive;

f.  Whether the alleged conduct constitutes violations of the laws asserted;

g.  Whether Defendants' allege conduct violates public policy;

h.  Whether Defendants' representations in advertising, warranties, packaging, and labeling are false, deceptive, and misleading;

i.  Whether those representations are likely to deceive a reasonable consumer;

j.  Whether a reasonable consumer would consider the risk of the Passes not working;

k.  Whether Defendants were unjustly enriched as a result of its marketing, advertising, and sale of the Passes;

l.  Whether Defendants breached their express warranties;

m.  Whether Defendants breached their implied warranties;

n.  Whether certification of any or all of the classes proposed herein is appropriate under Fed. R. Civ. P. 23;

o.  Whether Plaintiffs and the Class Members are entitled to damages and/or restitution and the proper measure of that loss; and

p.  Whether an injunction is necessary to prevent Defendants from continuing to market and sell the Passes.

53.  **Adequacy:** Plaintiffs and their counsel will fairly and adequately protect and represent the interests of each member of the class. Plaintiffs have retained counsel experienced in

complex litigation and class actions. Plaintiffs' counsel has successfully litigated other class action cases similar to that here and has the resources and abilities to fully litigate and protect the interests of the class. Plaintiffs intend to prosecute this claim vigorously. Plaintiffs have no adverse or antagonistic interests to those of the Class, nor are Plaintiffs subject to any unique defenses.

54.    **Superiority:** A class action is superior to the other available methods for a fair and efficient adjudication of this controversy. The damages or other financial detriment suffered by Plaintiffs and the individual Class members is relatively small compared to the burden and expense that would be entailed by individual litigation of their claims against Defendants. It would thus be virtually impossible for Plaintiffs and Class members, on an individual basis, to obtain meaningful and effective redress for the wrongs done to them. Further, it is desirable to concentrate the litigation of the Class members' claims in one forum, as it will conserve party and judicial resources and facilitate the consistency of adjudications. Plaintiffs know of no difficulty that would be encountered in the management of this case that would preclude its maintenance as a class action.

55.    The Class also may be certified because Defendants have acted or refused to act on grounds applicable to the Class, thereby making appropriate final declaratory and/or injunctive relief with respect to the members of the Class as a whole.

56.    Plaintiffs seek preliminary and permanent injunctive and equitable relief on behalf of the entire Class, on grounds generally applicable to the entire Class, to enjoin and prevent Defendants from engaging in the acts described above, such as continuing to market and sell Passes that may be defective. Further, Plaintiffs seek for Defendants to provide a full refund of the purchase price of the Passes to Plaintiffs and the Class members.

57.     Unless a Class is certified, Defendants will retain monies received as a result of their conduct that was taken from Plaintiffs and the Class members. Unless a Class-wide injunction is issued, Defendants may continue to commit the violations alleged and the members of the Class and the general public will continue to be misled and placed in harms' way.

## CAUSES OF ACTION
### FIRST CAUSE OF ACTION
**Negligence**
**(On Behalf of Plaintiffs and the Classes)**

58.     Plaintiffs incorporate Paragraphs 1-57 by reference as if fully set forth herein.

59.     Defendants have a duty to provide operable Passes to consumers.

60.     Defendants breached this duty by designing, producing, marketing, and selling inoperable Passes.

61.     Defendants' breach of this duty to provide operable Passes caused damages to Plaintiffs.

62.     Plaintiffs were damaged in that they  lost the benefit of the bargain, have suffered economic loss through the lack of refund, have suffered inconveniences due to the constant denial of flights, refunds, and have suffered emotional distress in their attempts to simply get their money back.

63.     Defendants' actions caused these damages both factually and proximately.

64.     But for Defendants' design, production, marketing, and sale of inoperable passes, Plaintiffs and the Class would not have been damaged.

65.     In addition, it is foreseeable that producing an inoperable or invalid Pass would cause damages as Plaintiffs and the Class purchased the Passes to fly and the inoperable Passes would not grant Plaintiffs and the Class their bargained for flights.

66.     Due to Defendants' conduct, Plaintiffs were damaged by Defendants in that Plaintiffs have been deprived of the benefit of their bargain and loss of purchase price and have missed travel opportunities that they will never get back due to lost time and expenses.

67.     Plaintiffs and the Class seek actual damages, attorneys' fees, costs and any other just and proper relief available thereunder for Defendants' negligent failure to deliver the bargained for Passes.

## SECOND CAUSE OF ACTION
### Negligent Misrepresentation
### (On Behalf of Plaintiffs and the Classes)

68.     Plaintiffs incorporate Paragraphs 1-57 by reference as if fully set forth herein.

69.     Through their advertising and the course of their regular business, Defendants made representations to Plaintiffs and the Class concerning the function, operability, and validity of the Passes.

70.     Defendants did not practice reasonable care in the above-mentioned design, creation, production, sale, and marketing of the Passes.

71.     Defendants made these statements as to guide consumers, such as Plaintiffs and the Class, in the transactional process.

72.     Defendants knew that such statements would be relied upon, the fact that Defendants' Passes were operable and offered nationwide flights, by Plaintiffs and the Class, given that the statements were the entire reasoning for the purchase of the Passes.

73.     Plaintiffs and the Class would not have purchased the Passes without such statements and assertations put forth by Defendants.

74.     Defendants intended that Plaintiffs and the Class to rely on the representations made by Defendants regarding the Passes.

75.     Plaintiffs reasonably relied upon such representations and omissions to their detriment as they suffered damages.

76.     By reason thereof, Plaintiffs and Class Members have suffered damages in an amount to be proven at trial.

77.     Due to Defendants' conduct, Plaintiffs were damaged by Defendants in that Plaintiffs have been deprived of the benefit of their bargain and loss of purchase price and have missed travel opportunities that they will never get back due to lost time and expenses.

78.     Plaintiffs and the Class seek actual damages, attorneys' fees, costs and any other just and proper relief available thereunder for Defendants' negligent misrepresentation of the Passes.

**THIRD CAUSE OF ACTION**
**Unjust Enrichment**
**(On Behalf of Plaintiffs and the Classes)**

79.     Plaintiffs incorporate Paragraphs 1-57 by reference as if fully set forth herein.

80.     Plaintiffs and the Class bestowed benefits upon Defendants in the form of monies that were paid in exchange for Defendants' Passes.

81.     These benefits bestowed by Plaintiffs were not a donation to Defendants as these monies were given for the purchase of the Passes.

82.     As a result of Defendants' wrongful and deceptive conduct alleged herein, Defendants knowingly and voluntarily accepted and retained wrongful benefits in the form of money paid by the Plaintiffs and members of the Class when they purchased the Passes.

83.     In so doing, Defendants acted with conscious disregard for the rights of Plaintiffs and members of the Class.

84.     Plaintiffs and the Class paid for Passes that were properly functioning, Passes whose sole function was providing unlimited flights. Instead, they received something entirely different and relatively unusable.

85.     As a result of Defendants' wrongful conduct as alleged herein, Defendants have been unjustly enriched at the expense of, and to the detriment of, Plaintiffs and members of the Class.

86.     Defendants' unjust enrichment is traceable to, and resulted directly and proximately from, the conduct alleged herein.

87.     Under the common law doctrine of unjust enrichment, it is inequitable for Defendants to be permitted to retain the benefits it received, and is still receiving, without justification, from the false and deceptive manufacturing, labeling, and marketing of the Passes to Plaintiffs and members of the Class.

88.     Defendants' retention of such funds under circumstances making it inequitable to do so, constitutes unjust enrichment.

89.     The financial benefits derived by Defendants rightfully belong to Plaintiffs and members of the Class.

90.     Given the above, the circumstances make Defendants' retention of funds inequitable, without reimbursement for the funds to Plaintiffs and the Class.

91.     Defendants should be compelled to disgorge in a common fund for the benefit of Plaintiffs and members of the Class all wrongful or inequitable proceeds received by them, plus interest thereon.

92.     Plaintiffs and the Class seek actual damages, attorneys' fees, costs and any other just and proper relief available under the laws.

## FOURTH CAUSE OF ACTION
### Breach of Express Warranty
### (On Behalf of Plaintiffs and the Classes)

93.     Plaintiffs incorporate Paragraphs 1-57 by reference as if fully set forth herein.

94.     As detailed above, Defendants, through its advertising and marketing expressly warranted that the Passes were for the purposes intended, that they were of merchantable quality, and that they actually provided unlimited flights.

95.     Moreover, the description for the Passes represents the use of these Passes serves to provide unlimited flights. Such statements constitute an affirmative promise that these Passes will indeed provide flights.

96.     Defendants breached this express warranty by providing Passes that were inoperable and could not provide such promised flights. The Passes, through whatever means, are inoperable.

97.     Plaintiffs and the other Class Members read and relied on these express warranties provided by Defendants in the description of the product and subsequent advertisements.

98.     Defendants breached their express warranties because the Passes at issue are defective and unfit for their intended use.

99.     Defendants' breach of warranty proximately caused damages as it is foreseeable that such defective Passes, incapable of delivering on their warranties, would deprive Plaintiffs of their benefit of the bargain and monies paid for such Passes.

100.     Defendants were given notice of this breach through Plaintiffs' numerous phone calls and notifications of such failures and inoperability of such Passes.

101.   Plaintiffs and the other Class Members have suffered harm on account of Defendants' breach of its express warranty regarding the fitness for use of the Passes and are entitled to damages to be determined at trial.

102.   Plaintiffs and the Class seek actual damages, attorneys' fees, costs and any other just and proper relief thereunder for Defendants' failure to deliver Passes conforming to their express warranties and resulting breach.

## FIFTH CAUSE OF ACTION
### Breach of Implied Warranty of Fitness For A Particular Purpose
### (On Behalf of Plaintiffs and the Classes)

103.   Plaintiffs incorporate Paragraphs 1-57 by reference as though fully set forth herein.

104.   Defendant's Passes were to be used as passes to provide unlimited flights in the airline setting specifically for Plaintiffs to travel unlimitedly. Thus, Defendant's Passes were of a particular purpose.

105.   Defendant knew of this particular purpose as Defendant produced, marketed, sold, and advertised the Passes as providing unlimited flights.

106.   Defendant knew that Plaintiffs relied on this promise of particularity as Defendant was aware of the assertations put forth regarding specificity and Plaintiffs' required reliance on such a product.

107.   Plaintiffs relied on Defendant's skill and capability to provide such a specific product.

108.   Due to Defendant's conduct, Plaintiffs were damaged by Defendant in that Plaintiffs have been deprived of the benefit of their bargain and loss of purchase price and have missed travel opportunities that they will never get back due to lost time and expenses.

109.    Plaintiffs and the Class seek actual damages, attorneys' fees, costs and any other just and proper relief available under the laws.

## SIXTH CAUSE OF ACTION
### Breach of Implied Warranty of Merchantability
### (On Behalf of Plaintiffs and the Classes)

110.    Plaintiffs incorporate Paragraphs 1-57 by reference as though fully set forth herein.

111.    Defendants sold the Passes to Plaintiffs and other consumers.

112.    Plaintiffs are people who are reasonably expected to use such Passes, given that the Passes were sold to the public and Plaintiffs are consumers.

113.    Defendants are a commercial airline in the business of selling flights to consumers.

114.    Defendants presented the Passes as operable Passes that granted access to unlimited flights for Plaintiffs and other consumers.

115.    The Passes were not merchantable at the time of sale given that they did not provide unlimited flights.

116.    This lack of merchantability is a breach of warranty.

117.    This breach both factually and proximately caused damages to Plaintiffs through their loss of funds, deprivation of the  benefit of their bargain, have missed trips and other travel opportunities, emotional duress, and inconvenience faced throughout the process of remedying the issue related to the Passes.

118.    Plaintiffs notified Defendants of this breach and lack of merchantability through consistent calls, messages, and other communications to Defendants regarding their failure to provide operable Passes.

119.     Plaintiffs and the Class seek actual damages, attorneys' fees, costs and any other just and proper relief available thereunder for Defendants' failure to deliver goods conforming to their implied warranties and resulting in breach.

### SEVENTH CAUSE OF ACTION
**Breach of Contract**
**(On Behalf of Plaintiffs and the Class)**

120.     Plaintiffs incorporate Paragraphs 1-57 as if fully set forth herein.

121.     Through their marketing, advertisements, and promises, Defendants created a contract with Plaintiffs.

122.     The contract between Plaintiffs and Defendants was a contract in and of itself separate and apart from any contract for a specific ticket to any specific destination.

123.     In specific, Plaintiffs were to receive unlimited flights in exchange for the purchase price of Defendants' Passes.

124.     Plaintiffs performed their obligations under the contract through their paid purchase price of the Passes.

125.     Defendants failed to perform their obligation under the contract in that Defendants failed to provide unlimited flights as included in the Passes.

126.     Plaintiffs and the Class have been damaged as a direct and proximate result of Defendants' breach.

127.     Plaintiffs and the Class seek actual damages, attorneys' fees, costs and any other just and proper relief available under the laws.

### EIGHTH CAUSE OF ACTION
**Strict Product Liability for Misrepresentation**
**(On Behalf of Plaintiffs and the Class)**

128.     Plaintiffs incorporate Paragraphs 1-57 as if fully set forth herein.

129. Defendants were engaged in the business of selling flights and airline tickets.

130. Defendants misrepresented the material fact that its Passes provided unlimited flights to those who purchased such Passes.

131. This fact is material because it is the entire nature of the Passes themselves and Plaintiffs would not have purchased the Pass had they known of the true nature of the Passes.

132. Defendants' misrepresentations were made to the public at large and potential consumers through Defendants' advertising and marketing.

133. Plaintiffs are people who reasonably expected to use the Passes as marketed by Defendants. This reasonability is based upon the fact that Plaintiffs are consuming members of the public who purchased the Pass relying on Defendants' marketing.

134. It is reasonably foreseeably that Plaintiffs would be harmed by Defendant's misrepresentation.

135. Plaintiffs suffered damages due to Defendants' misrepresentation.

136. Due to Defendants' conduct, Plaintiffs were damaged by Defendants in that Plaintiffs have been deprived of the  benefit of their bargain and loss of purchase price and have missed travel opportunities that they will never get back due to lost time and expenses.

137. Plaintiffs and the Class seek actual damages, attorneys' fees, costs and any other just and proper relief available under the laws.

### NINTH CAUSE OF ACTION
**Fraud**
**(On Behalf of Plaintiffs and the Classes)**

138. Plaintiffs incorporate Paragraphs 1-57 as if fully set forth herein.

139. Defendants made a fraudulent misrepresentation of material fact in that Defendants marketed, sold, and promised Plaintiffs a Pass that would provide unlimited flights.

140. This fact of the Pass providing unlimited flights is material as that was the entire purpose of the Pass and without such a promise, Plaintiffs would not have purchased the Passes.

141. Had Plaintiffs known of the true inoperable and defective nature of the Passes, Plaintiffs would not have purchased a Pass.

142. Plaintiffs relied on Defendants' misrepresentation in their purchase of the Pass.

143. Plaintiffs were justified in relying on this misrepresentation as the true nature of the Pass was not known to Plaintiffs and Defendants promised a Pass that would provide unlimited flights.

144. Plaintiffs have suffered damages as a direct and proximate result of this justification as Plaintiffs have lost out on the benefit of their bargain, lost funds stemming from their purchase price, have missed trips and other travel opportunities, have suffered emotional duress, and have been greatly inconvenienced by Defendants' inoperable passes.

145. Plaintiffs and the Class seek actual damages, attorneys' fees, costs and any other just and proper relief available under the laws.

## TENTH CAUSE OF ACTION
### Fraudulent Misrepresentation
### (On Behalf of Plaintiffs and the Class)

146. Plaintiffs incorporate Paragraphs 1-57 by reference as if fully set forth herein.

147. Defendants made a fraudulent misrepresentation of material fact in that Defendants stated that the Passes would provide unlimited flights.

148. These Passes did not provide unlimited flights and this assertion of unlimited flights was the entire basis for Plaintiffs' purchase.

149. Plaintiffs relied on the above misrepresentation as the promise of unlimited flights was the entire reason for their purchase of the Pass.

150.    Plaintiffs were justified in relying upon the above misrepresentation that Defendant's Passes would provide unlimited flights.

151.    Plaintiffs' reliance resulted in damages as Plaintiffs would not have purchased, thus losing the money related to such purchase, the Pass.

152.    As a direct and proximate cause of  Defendants' conduct, Plaintiffs were damaged by Defendant in that Plaintiffs have been deprived of the benefit of their bargain and loss of purchase price and have missed travel opportunities that they will never get back due to lost time and expenses.

153.    Plaintiffs and the Class seek actual damages, attorneys' fees, costs and any other just and proper relief available under the laws.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs, on behalf of themselves and all others similarly situated, pray for judgement against Defendants as to each and every count, including:

A.  An order declaring this action to be a proper class action, appointing Plaintiffs and their counsel to represent the Class/Sub-Class, and requiring Defendants to bear the costs of class notice;

B.  An order enjoining Defendants from selling the Passes;

C.  An order enjoining Defendants from suggesting or implying that the Passes are effective for their intended purpose of unlimited flights;

D.  An order requiring Defendants to engage in a corrective advertising campaign and engage in any further necessary affirmative injunctive relief;

E.  An order awarding declaratory relief and any further retrospective or prospective injunctive relief permitted by law or equity, including enjoining Defendants from

continuing the unlawful practices alleged herein, and injunctive relief to remedy Defendants' past conduct;

F.  An order requiring Defendants to pay restitution/damages to restore all funds acquired by means of any act or practice declared by this Court to be an unlawful, unfair, or fraudulent business act or practice, plus pre- and post-judgment interest thereon;

G.  An order requiring Defendants to disgorge any ill-gotten benefits received from Plaintiffs and members of the Class/Sub-Class as a result of any wrongful or unlawful act or practice;

H.  An order requiring Defendants to pay all actual and statutory damages permitted under the counts alleged herein;

I.  An order awarding attorneys' fees and costs to Plaintiffs and the Class/Sub-Class; and

J.  An order providing for all other such equitable relief as may be just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiffs demand a trial by jury on all issues so triable.

Dated November 29, 2023

Respectfully Submitted,
/s/ Blake G. Abbott
Blake G. Abbott
Paul J. Doolittle
**POULIN | WILLEY**
**ANASTOPOULO, LLC**
32 Ann Street
Charleston, SC 29403

Tel: (803) 222-2222
Email: blake.abbott@poulinwilley.com
      paul.doolittle@poulinwilley.com
      cmad@poulinwilley.com