**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:23-cv-02093-RMR-KAS

JERIYMA HARTSFIELD, SIMON GEBRU, MARK GRAHAM,
DAKOTA HELM, MARLON GOSA, DOMINIQUE GUTIERREZ,
MISTY MCKINNEY, and CHRIS KLINE, individually and on behalf
of others similarly situated,

    Plaintiffs,

v.

FRONTIER AIRLINES, INC., FRONTIER AIRLINES
HOLDING, INC., FRONTIER AIRLINES MANAGEMENT,
INC., and INDIGO PARTNERS, LLC,

    Defendants.

---

**DEFENDANTS' MOTION TO COMPEL ARBITRATION AND DISMISS CLASS
ACTION COMPLAINT PURSUANT TO RULE 12(B)(5) AND (6)**

---

Defendants Frontier Airlines, Inc. ("Frontier"), Frontier Airlines Holdings, Inc. ("Frontier Holdings"), Frontier Airlines Management, Inc. ("Frontier Management") (collectively, "Defendants")[1] move for an order to compel arbitration of Plaintiffs' claims, and dismiss, pursuant to Fed. R. Civ. P. 12(b)(5) and (6), the Class Action Amended Complaint ("Amended Complaint") filed by Plaintiffs Jeriyma Hartsfield, Simon Gebru, Mark Graham, Dakota Helm, Marlon Gosa, Dominique Gutierrez, Misty McKinney and Chris Kline ("Plaintiffs") for the reasons below.

**CERTIFICATE OF CONFERRAL**

In accordance with RMR Civ. Practice Standard 7.1(B), on December 18, 2023, Defendants' counsel conferred with Plaintiffs' counsel regarding the instant Motion, including each basis for dismissal. Plaintiffs' counsel advised that their clients oppose the relief requested herein, and believe the Amended Complaint is sufficient in all aspects at issue.

**PRELIMINARY STATEMENT**

This action arises from Plaintiffs' enrollment in Frontier's GoWild! Pass Program (the "Pass Program"), which gives a passholder the ability to book a ticket at an airfare of $0.01 on select flights operated by Frontier with their GoWild! Pass ("Pass"). Plaintiffs' claims are based on their alleged inability to book flights under the Pass Program. Under the Terms and Conditions ("T&C") that govern the Pass Program, however, Plaintiffs expressly agreed to arbitrate their claims and waived any right to bring this action on behalf of a putative class.

Moreover, Plaintiffs' claims are expressly preempted by the Airline Deregulation Act ("ADA"), which bars state law claims that relate to an airline's "price, route or service." 49 U.S.C. § 41713. Here, Plaintiffs' state law claims arise from their participation in a customer loyalty

---

[1] To the extent the Amended Complaint attributes Frontier's actions to Frontier Holdings and Frontier Management, the latter entities adopt all of the arguments raised herein as defenses. These entities are not involved in airline operations, customer loyalty programs or contracts. *See* Movants' Appx., p. 2 – Declaration of Shannon Muir ("Muir Decl."), at ¶ 5. Defendant Indigo Partners LLC is separately filing a motion to dismiss on these and jurisdictional grounds.

1

program that implicates Frontier's prices, routes, and services because the Pass is used to allow access to available flights at discounted rates. Plaintiffs' claims also fall within the exclusive purview of the U.S. Department of Transportation's enforcement authority over alleged unfair and deceptive practices by air carriers.

Finally, the Amended Complaint fails to state any viable claim against Frontier because, *inter alia*, (1) Frontier's Pass Program does not guarantee the availability of flights; (2) the T&C expressly disclaim liability for any claims arising from a customer's inability to access and complete booking transactions; (3) under the T&C, Plaintiffs waived any claims for damages against Frontier arising from participation in the Pass Program; (4) Frontier's T&C expressly disclaim all warranties; (5) Plaintiffs' tort claims are barred by the independent tort doctrine; (6) Plaintiffs' unjust enrichment claim is impermissibly duplicative of their breach of contract claim; (7) Plaintiffs have not and cannot identify a specific provision in the governing T&C that was breached by Frontier; and (8) several Plaintiffs do not even allege facts to support their inability to use the Pass. Nor can Plaintiffs assert any viable claims against Frontier Holdings and Frontier Management as neither entity conducts flight operations nor sells, advertises or contracts with consumers like Plaintiffs for loyalty program Passes. These entities also were not properly served.

## PROCEDURAL HISTORY

On August 17, 2023, Plaintiff Hartsfield filed a Class Action Complaint against Defendants and Indigo Partners LLC seeking declaratory and injunctive relief and refunds for allegedly selling Plaintiff a "nonrefundable and inoperable" Pass. Compl., Doc. 1, at ¶ 19. On November 29, 2023, Plaintiffs filed an Amended Complaint (Doc. 27). Rather than remove the non-airline Defendants or eliminate claims as Defendants explained was necessary during conferral, the Amended Complaint added seven additional Plaintiffs along with a screen shot, which, in fact, confirmed

2

the Pass enrollment process and the applicability of the Program's T&C.

## FACTUAL BACKGROUND

### A. The Parties

Frontier is a domestic commercial airline based in Denver, Colorado. *See* Doc. 27 at ¶ 27; Movants' Appx., p. 2 – Muir Decl. at ¶ 2. Frontier Holdings, a Delaware holding company with its principal place of business in Denver, Colorado, wholly owns Frontier. *Id*. at ¶ 3. Frontier Management is a Delaware corporation with its principal place of business in Denver, Colorado. *Id*. at p. 3, ¶ 4. It has no assets and conducts no business. *Id*. Neither Frontier Holdings nor Frontier Management is involved in flight operations or customer loyalty programs. *Id.* at ¶ 5.

Plaintiffs served process on Frontier Holdings and Frontier Management by personally delivering a copy of the summons and complaint to Shannon Muir, a Senior Manager for Frontier. Docs. 6, 7. Ms. Muir is not an employee, officer, director or managing agent for either company. Movants' Appx., p. 3 – Muir Decl. at ¶ 7. These entities' registered agent for service of process is Corporation Service Company (CSC). *Id*. at ¶ 6.

Plaintiffs are residents of South Carolina, Georgia, Ohio, Virginia, Illinois, Massachusetts, and Texas. Doc. 27 at ¶¶ 14, 20-26. Plaintiffs purchased their Passes from Frontier on various dates in November 2022, May 2023 and November 2023. *Id.* at ¶¶ 14, 15, 20-26. Plaintiffs vaguely claim that Defendants engaged in a "fraudulent scam" to entice them to purchase the Pass, which they claim they were unable to use. *Id.* at ¶¶ 8, 16.

### B. Frontier's Miles and GoWild! Pass Programs

Frontier offers its customers opportunities to enroll in customer loyalty programs, including Frontier's Miles Program ("Frontier Miles"), a frequent flier program where members can earn miles on flights that may be redeemed for travel on future Frontier flights. Members of

3

Frontier Miles also may enroll in the Pass Program, which gives a passholder the ability to book a ticket at an airfare of $0.01 on select flights operated by Frontier. In order to participate in the Pass Program, customers must agree to Frontier's T&C.  Movants' Appx., p. 6 – Declaration of Myriah Monteneri ("Monteneri Decl."), at ¶ 4. Air travel using the Pass is also governed by Frontier's Ticket Terms and Conditions and Contract of Carriage ("COC"). *Id.*

### C. Relevant Provisions In Frontier's Terms And Conditions

Frontier's T&C govern all aspects of the parties' rights and obligations under the Pass Program. Prior to completing enrollment, Plaintiffs affirmatively clicked the "Join Now" button, explicitly confirming they agreed to Frontier's T&C. *Id.* at ¶ 5, Ex. A (pp. 8-10). The hyperlink to the T&C is in bold and underlined. *Id.* Additionally, at other points in the enrollment process, each Plaintiff was presented with links to the T&C, and, upon completing their purchase, Frontier sent Plaintiffs an email confirming their enrollment, which expressly stated that participation is subject to Frontier's T&C. *Id.* at p. 6, ¶¶ 7, 8. The Amended Complaint includes a copy of the confirmation email sent to Plaintiff Hartsfield, providing links to the T&C. Doc. 27 at ¶ 15.  Plaintiffs could not have received the Pass *unless they expressly agreed to the Program's T&C.  Id.* at ¶ 5.

Crucially, the T&C provides: (1) enrollment in the Pass Program is conditioned on acceptance of the T&C (*id.* at p. 30, ¶ 12); (2) the Pass does not guarantee the availability of flights (*id.* at p. 31, ¶ 12(b)(1)-(2)); (3) the Pass Program enrollment fee is non-refundable (*id.* at p. 32, ¶ 12(c)(1)); (4) Frontier disclaims liability for any claim or damages arising out of participation in the Program (*id.*  at p. 37, ¶ 18(a), (d)); (5) an express disclaimer of all warranties (*id.*  at p. 38, ¶ 19); and (6) a mandatory arbitration clause and waiver of right to participate in a class action (*id.* at p. 39, ¶ 20(m)). *See id.* at pp. 19-39, containing T&C.

### STANDARD OF REVIEW

4

A. **Enforcement of Arbitration Agreements**

Under the Federal Arbitration Act, "[c]ourts 'must rigorously' enforce arbitration agreements according to their terms." *Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 230 (2013) (citation omitted); *see Sanchez v. Nitro-Lift Techs., LLC*, 762 F.3d 1139, 1145–46 (10th Cir. 2014). Arbitration agreements are presumptively valid, irrevocable, and enforceable, and courts are directed by congress to treat them as such. *See Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1621 (2018). If a party's allegations "touch matters" covered by the relevant arbitration agreement, then those claims must be arbitrated. *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 625 n. 13 (1985) (Blackmun, J.). There exists "a liberal policy favoring arbitration agreements." *Lewis,* 138 S. Ct. at 1621. A court must either stay or dismiss a lawsuit and compel the parties to arbitration upon a showing of two things: (1) that a valid arbitration agreement exists; and (2) that the dispute falls within the scope of those identified in the arbitration agreement. *See Frazier v. Western Union Company*, 377 F. Supp. 3d 1248, 1257 (D. Colo. 2019). Should a movant satisfy these requirements, arbitration is mandatory. *Id.*

B. **Rule 12(b)(5) and (6) Motion**

A motion to dismiss under Rule 12(b)(5) challenges the delivery of a summons and complaint and the burden is on the plaintiff to make a *prima facie* showing that plaintiff properly served process. *Pisani v. Ritz-Carlton Hotel Co.*, 2020 WL 6119796, at *2 (D. Colo. Aug. 24, 2020). When considering the adequacy of service of process, the court may consider affidavits and other documentary evidence. *Id.*

To survive a motion to dismiss under Rule 12(b)(6), the complaint must contain sufficient facts to state a claim that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While a court presumes plaintiff's factual allegations are true, the court need not accept conclusory

5

allegations without supporting factual averments. *Southern Disposal, Inc. v. Texas Waste*, 161 F.3d 1259, 1262 (10th Cir. 1998). A motion to compel arbitration or to enforce a class action waiver should be determined at an early stage in the litigation on a motion to dismiss and before discovery begins. *See Roman v. Spirit Airlines, Inc.*, 482 F. Supp. 3d 1304, 1311 (S.D. Fla. 2020).

## ARGUMENT

I. **PLAINTIFFS MUST ARBITRATE THEIR CLAIMS AND WAIVED ANY RIGHT TO BRING A CLASS ACTION**

   A. **Plaintiffs Agreed to Frontier's Terms & Conditions**

There can be no question that Plaintiffs agreed to, and are bound by, Frontier's T&C, which govern all aspects of the parties' rights and obligations under the Program. More specifically, in the enrollment process and prior to completing their purchases, Plaintiffs clicked the "Join Now" button, explicitly indicating that that they agreed to the T&C. Movants' Appx., p. 6 – Monteneri Decl., at ¶ 5. The hyperlink to the T&C is in bold and underlined font, and Plaintiffs could not complete the purchase unless they clicked a button expressly indicating their consent to the T&C. *Id.* at ¶ 5, Ex. A (pp. 8-10). Additionally, upon completing their purchase, Frontier sent Plaintiffs an email confirming their enrollment and providing a link with the governing T&C. *Id.* at p. 6, ¶ 7; Doc. 27 at ¶ 15.

In *Vernon v. Qwest Comm. Int'l, Inc.*, 857 F. Supp. 2d 1135, 1151 (D. Colo. 2012), the court enforced an arbitration agreement where plaintiffs clicked a box accepting terms and conditions containing an arbitration provision and received a welcome letter informing them of same. Here, Plaintiffs' clicked a "Join Now" button, which falls under the similar "hybrid arrangement" described by the *Vernon* court, where "the customer is told that consequences will necessarily flow from his assenting click and is also placed on notice of how or where to obtain a

6

full understanding of those consequences." *Id.* at 1149-50. Plaintiffs could not have received the Pass *unless they agreed to the T&C,* and thus, are bound by the T&C.

Where, as here, the existence of an arbitration clause has been established, "[t]he Court only decides enforceability issues specific to arbitration provisions, such as unconscionability or fraudulent inducement.... A challenge to the enforceability of a larger contract [] is for the arbitrator to decide." *Frazier*, 377 F. Supp. 3d at 1264. Plaintiffs have not alleged that the arbitration provision (or any other portion of the T&C) are unconscionable or invalid, nor can they prove so. *Bonanno v. Quizno's Franchise Co., LLC*, Case No. 06-CV-02358, 2009 WL 1068744, *12 (D. Colo. Apr. 20, 2009); *see Davis v. M.L.G. Corp.*, 712 P.2d 985, 991 (Colo. 1986).

### B. Under the T&C, Plaintiffs Must Arbitrate Their Claims

Because Plaintiffs are bound by Frontier's T&C, the Court must compel Plaintiffs to arbitrate their claims against Frontier. Specifically, **Section 20. Miscellaneous Provisions** of the T&C states that the "the [Pass] Member agrees to resolve any dispute in connection with *FRONTIER Miles* arising between Member and Frontier by submission to arbitration in Denver County, State of Colorado…" Movants' Appx., p. 6 – Monteneri Decl. at ¶ 8, Ex. D (pp. 19-39). Plaintiffs' claims fall within the scope of the arbitration clause as they directly relate to their use of the Pass Program as a Frontier Miles member and the Program Rules. Plaintiffs' claims certainly "touch matters" contemplated in the arbitration agreement. *Mitsubishi Motors*, 473 U.S. at 625 n. 13. Accordingly, the Court should enter an order compelling arbitration and dismissing these proceedings. *See, e.g.*, *Nat'l Am. Ins. Co. v. SCOR Reinsurance Co.*, 362 F.3d 1288 (10th Cir. 2004) (dismissing complaint).

Alternatively, if the Court believes it may need to revisit Plaintiffs' claims, the Court should stay these proceedings until the arbitration is completed in accordance with the parties'

7

agreement. 9 U.S.C. § 3; *see also Vernon*, 857 F. Supp. 2d at 1157–58 (enforcing arbitration and staying matter). In any event, there is no basis for Plaintiffs to continue litigation in this forum.

###    C.    Plaintiffs Waived Their Right to Bring a Class Action

In addition to agreeing to arbitrate their claims, Plaintiffs agreed that "[a]ny case brought under the[] Program Rules may be pursued only in a party's individual capacity and not as a plaintiff or class member in any purported class or representative proceeding." Movants' Appx. at p. 39 – Ex. D to Monteneri Decl. at ¶ 20. Accordingly, Plaintiffs' clams undisputedly must be stricken as they waived any right to serve as class representatives.  Because Plaintiffs agreed to be bound by Frontier's T&C, the class action bar is enforceable. *See Bonanno,* 2009 WL 1068744 at *12 (D. Co. April 20, 2009) (enforcing class action bar under Colorado law). Indeed, such clauses are presumed enforceable. *Id.* at *17. For this reason alone, Plaintiffs' Class Action Complaint should be dismissed in its entirety. *See, e.g., Roman v. Spirit Airlines, Inc.*, No. 20-13599, 2021 WL 4317 318, at *1-2 (11th Cir. 2021) (enforcing class action waiver language in airline's contract of carriage and dismissing action); *Bombin v. Southwest Airlines Co.*, 2023 WL 5832166, *1, 11–12 (E.D. Pa. Sept. 7, 2023) (same).

## II.    PLAINTIFFS' CLAIMS ARE EXPRESSLY PREEMPTED BY THE ADA

Plaintiffs' state-law claims are preempted by federal law and must be dismissed. Federal law can preempt state law either expressly or by implication. *See Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 383 (1992); *Schneberger v. Air Evac EMS, Inc.,* 749 Fed. App'x 670, 676 (10th Cir. 2018). Here, Plaintiffs' state-law claims are expressly preempted by the ADA because they relate to Frontier's "prices", "routes," and "services."

###    A.    The ADA's Broad Construction Mandates Dismissal

The ADA was enacted to deregulate the airline industry and ensure "maximum reliance on competitive market forces," which would further "efficiency, innovation and low prices" in the

8

airline services market. *Schneberger*, 749 Fed. App'x at 676 (quoting *Morales*, 504 U.S. at 378). To ensure that states would not interfere with federal deregulation, an express preemption provision was included in the statute and provides:

> a State, political subdivision of a State, or political authority of at least 2 States may not enact or enforce a law, regulation, or other provision having the force and effect of law **related to a price, route, or service of an air carrier** that may provide transportation under this subpart.

49 U.S.C. § 41713(b)(1) (emphasis added). The ADA's "related to" language is broadly construed to include state law claims "having a connection with or reference to airline '[prices], routes, or services'." *Morales*, 504 U.S. at 383-84; *see Am. Airlines, Inc. v. Wolens*, 513 U.S. 219, 223 (1995); *Schneberger*, 749 Fed. App'x at 676. Preemption is construed so broadly that it occurs even where the effect on prices, routes, and services is only indirect. *Rowe v. N.H. Motor Transp. Ass'n,* 552 U.S. 364, 370 (2008). ADA preemption also extends to "laws of general applicability," to state laws that are "consistent" with federal laws, and to common law claims. *Morales*, 504 U.S. at 386-87; *see Northwest, Inc. v. Ginsberg*, 572 U.S. 273, 283-84 (2014).

Significantly here, the Supreme Court in *Morales* found that state attorney general guidelines fell within the ADA's broad preemptive scope and struck them as the guidelines attempted to set standards regarding the content and format of *airline advertising.* 504 U.S. at 385. In *Wolens,* the Supreme Court held that the ADA preempted Plaintiffs' fraud claims under the Illinois consumer protection statute because the claims, which related to retroactive changes to the airline's *frequent flier program*, sought to regulate the airline's prices and marketing practices. 513 U.S. at 225. And, while *Wolens* recognized a narrow exception from preemption where a state-law claim sought recovery for the airline's alleged breach of "its own, self-imposed undertaking" (*id*. at 228), only the parties' bargain could be enforced "with no enlargement or enhancement based on state laws or policies external to the agreement." *Id*. at 233. Nearly twenty years later, in

9

*Ginsberg*, the Supreme Court reaffirmed the breadth of the ADA's preemptive reach and, in another *frequent flier program case*, held that the ADA preempted plaintiff's implied covenant of good faith and fair dealing claim arising from his termination from the program. Applying the ADA's breadth here, Plaintiffs' state law claims arising from the sale and use of a customer loyalty program are all federally preempted and must be dismissed.

### B. Plaintiffs' Claims Relate To "Prices", "Routes" And "Services"

Because Plaintiffs' state law claims arise from their alleged inability to use a Pass that would gain them access to certain flights at a dramatically reduced price of $0.01, they plainly relate to Frontier's "prices", "routes" and "services" for ADA purposes.[2] Both *Wolens* and *Ginsberg* make clear that state law claims arising from participation in a customer loyalty program like the Pass Program[3] are connected to an airlines' prices because the mileage awards can be redeemed for travel and when used in this way, the price a customer pays is "either eliminated or reduced." *Ginsberg*, 572 U.S. at 284; *see Wolens,* 513 U.S. at 226 (claims relating to use of frequent flier miles relate to prices because mileage credits are used for free flights). Moreover, such claims also relate to services because, like the Pass here, passengers are provided access to certain airline flights. *Id.* Similarly, they relate to Frontier's routes as the Pass only permits Plaintiffs to book within a short window prior to an available flight.

By challenging Frontier's design, advertising and sale of the Pass, Plaintiffs' claims plainly affect Frontier's Pass Program—a benefit where airlines routinely compete—and runs counter to the ADA's purpose. *See Ginsberg,* 572 U.S. at 288 (recognizing that airlines have competing loyalty programs and customers dissatisfied with one program may enroll in a more favorable rival program). Allowing Plaintiffs to proceed with their state law claims would frustrate the forces of

---

[2] The ADA defines a "price" as a "a rate, fare or charge." 49 U.S.C. § 40102(a)(39).

[3] In order to obtain a Pass, a customer must be enrolled in Frontier Miles.

10

competition and also serve as a "means to guide and police [Frontier's] marketing practices" with respect to its Pass Programs—a result prohibited by *Wolens*. 513 U.S. at 228 (ADA's purpose is "to leave largely to the airlines themselves, and not at all to States, the selection and design of marketing mechanisms appropriate to the furnishing of air transportation services").

Indeed, Plaintiffs' claims essentially allege fraud and unfair and deceptive practices, which are consistently held preempted by the ADA and fall within the exclusive enforcement authority of DOT. *See* Final Rule, *Defining Unfair or Deceptive Practices*, 85 FR 78707, 78708 (Dec. 7, 2020) (DOT has "the exclusive authority to prohibit unfair or deceptive practices of air carriers"); *Ginsberg*, 572 U.S. at 289 (affirming DOT's authority to investigate loyalty programs); *Wolens*, 513 U.S. at 228 (ADA preempted claims under Illinois consumer fraud statute).

## C. Plaintiffs' Contract Claim Does Not Satisfy The *Wolens* Exception

The narrow exception in *Wolens* for a breach of contract claim that arises from "the airline's alleged breach of its own, self-imposed undertaking" does not apply here. 513 U.S. at 229. Contract claims remain preempted if they enlarge or enhance the parties' bargain based on state laws or policies external to the agreement. *Id*. at 233. In *Schneberger v. Air Evac EMS*, the breach of contract claim was held preempted because it was not based on any breached term within the four corners of the contract, but rather relied on concepts of "fairness and reasonableness." 749 Fed. App'x at 678. Where a court would need to insert terms or look outside the contract to enforce an alleged meaning or insert a term, it is plainly relying on state-law theories or policies and not a "self-imposed obligation." *See, e.g.*, *Alatortev v. JetBlue Airways, Inc.,* No. 3:17-04859-WHO, 2018 WL 784434, at *6-7 (N.D. Cal. Feb. 7, 2018) (holding breach of contract claim preempted by ADA because it depended on claims outside the terms of the COC).

This is precisely what Plaintiffs' claims do here. Plaintiffs are seeking to impose greater

11

obligations on Frontier than required by the T&C. *See, e.g., Miller v. Delta Air Lines, Inc.*, No. 4:11-cv-10099-JLK, 2012 WL 1155138 at *2 (S.D. Fla. Apr. 5, 2012) (claims that airline misled plaintiff about baggage reimbursement "go far beyond the obligations" in the contract of carriage). Frontier's terms are clear that it does not guarantee the availability of flights when using the Pass and assumes no liability for the passholder's inability to complete a booking. Frontier's T&C further inform Plaintiffs of its disclaimer of any warranties, its liability limitations and exclusion of damages.[4]  Movants' Appx., p. 6 – Monteneri Decl. at ¶ 8, Ex. D (pp. 37-38) at ¶¶ 18, 19. For Plaintiffs to succeed here, they would be relying on state-law theories other than breach of contract. This is inconsistent with *Wolens* and mandates dismissal. *Schneberger,* 749 Fed. App'x at 678-79.

### III.     PLAINTIFFS' CLAIMS ARE FACIALLY DEFICIENT

#### A.     Plaintiffs' Breach of Contract Claim Fails (Count 7)

Plaintiffs allege that Frontier subjected itself to a contractual obligation through its "marketing, advertisements, and promises" to provide Plaintiffs "with unlimited flights in exchange for the purchase price of [the Pass]." Doc. 27 at ¶¶ 121-123. Plaintiffs claim Defendants breached this obligation by failing to "provide unlimited flights as included in the Passes." *Id.* at ¶ 125.  However, the actual contract—the T&C—refutes such a claim.

To succeed, Plaintiffs must allege: (1) the existence of a contract; (2) performance by the plaintiff or some justification for nonperformance; (3) failure to perform the contract by the defendant; and (4) resulting damages to the plaintiff. *Western Distr. Co. v. Diodosio*, 841 P.2d 1053, 1058 (Colo. 1992). Plaintiffs have failed to identify any actual provision of the contract that Frontier allegedly breached. For this reason alone, Plaintiffs' claim must fail. *See Snyder v. ACORD Corp.*, 2016 WL 192270, *12 (D. Colo. Jan. 15, 2016) (dismissing breach claim because

---

[4] Because Plaintiffs raise a breach of contract claim, Frontier rightfully provides the Court with its T&C that govern Plaintiffs' claims.

"Plaintiffs have not identified any [breached] provisions of the [contracts]").

To that end, the T&C provide that Frontier does not guarantee the availability of air transportation services, that not all flights will be available for booking, and that Frontier may not be held liable for any failure to complete a transaction. *See* Movants' Appx., p. 31 – Ex. D to Monteneri Decl. at ¶¶ 12(b)(1-2), 18(a). Furthermore, the T&C provide that "GoWild! Pass tickets become available for booking the day before flight departure for domestic travel and ten (10) days before flight departure for international travel." *Id.* at p. 37, ¶ 18(b)(5). Plaintiffs do not allege that they attempted to book flights within these time frames. Nor do Plaintiffs Gosa and Kline allege any facts regarding problems they encountered in using the Pass. Doc. 27 at ¶¶ 23, 26.

### B. Plaintiffs' Tort Claims Are Barred

Plaintiffs' claims sounding in tort (Counts 1–2, 8–9) are barred by the economic loss rule. Each tort claim is based on exactly the same alleged conduct and injury as Plaintiffs' breach of contract claim. The respective obligations regarding the Pass are governed by the T&C. "[A] party suffering only economic loss from the breach of an express or implied contractual duty may not assert a tort claim for such a breach absent an independent duty of care under tort law." *BRW, Inc. v. Dufficy & Sons, Inc.*, 99 P.3d 66 (Colo. 2004). Frontier's obligations arise under the T&C (and Plaintiffs indeed assert a contract claim) – *not any independent duty of care under tort law*.

Plaintiffs' misrepresentation and fraud claims must be dismissed because they do not satisfy the heightened pleading standard of Rule 9(b), requiring Plaintiffs to plead them with particularity. *See Dean v. Wright Medical Tech., Inc.*, 593 F. Supp. 3d 1086, 1096 (D. Colo. 2022). Here, Plaintiffs' generalized allegations regarding Frontier's purported misrepresentations fall far short of this standard. *See, e.g.*, Doc. 27 at ¶¶ 130, 139. Plaintiffs wholly fail to allege who made the alleged misrepresentations, when they were made, and in what context, in a manner sufficient

13

to satisfy Rule 9(b). *See Dean*, 593 F. Supp. 3d at 1096 (dismissing negligent and fraudulent misrepresentation claims arising from marketing materials).

C.     **Plaintiffs' Unjust Enrichment Claim Is Barred**

Plaintiffs' unjust enrichment claim is duplicative of their breach of contract claim because it is based on Plaintiffs' payment for a Pass that they allege did not provide unlimited flights. But the existence of the T&C controls. "A claim for unjust enrichment may not be asserted if there is a valid contract covering the subject matter of the alleged obligation to pay." *Kiosk Info. Sys., Inc. v. Cole Kepro Int'l, LLC*, No. 23-CV-00352, 2023 WL 4269409, *10 (D. Colo. June 29, 2023). Since a valid contract covered Plaintiffs' obligation to pay for the Pass, their unjust enrichment claim necessarily fails.  Moreover, Plaintiffs cannot plead this claim in the alternative. *Id.*

D.     **Plaintiffs' Breach of Warranty Claims Are Barred (Counts 4-6)**

Plaintiffs' warranty claims (Counts 4–6) must be dismissed because Plaintiffs failed to allege the existence of any express warranty and, in any event, all warranties are explicitly disclaimed under the T&C. Movants' Appx., p. 38 – Ex. D to Monteneri Decl. at ¶19. Here, Frontier's disclaimer was by a conspicuous writing, in a standalone section, and in all capital letters. It also explicitly includes warranties of merchantability and implied warranties for particular purpose. Accordingly, Plaintiffs' warranty claims must be dismissed. *See Plains Dedicated Finance LLC, v. Peterbilt Motors Co.*, No. 22-CV-01615, 2022 WL 17770524, *5 (D. Colo. Dec. 19, 2022).

VI.    **FRONTIER HOLDINGS AND FRONTIER MANAGEMENT SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM AND IMPROPER SERVICE**

Frontier Holdings is a holding company that wholly owns Frontier. Movants' Appx., p. 2 – Muir Decl. at ¶ 3.  Frontier Management has no assets, does not conduct any business, and is not an active company.  *Id.* at p. 3, ¶ 4.  Neither of these entities is involved in airline operations nor

14

customer loyalty programs and neither contracts with Frontier customers. *Id*. at ¶ 5. Any claims against them should be dismissed outright, particularly as Plaintiffs do not plead any facts detailing these entities' roles in the marketing and sale of the Pass Program. *See Malaga v. Abdulmutallab,* 903 F. Supp. 2d 270, 273 (S.D.N.Y. 2012) (dismissing claim against holding company of airline); *Glass v. Northwest Airlines, Inc.,* 686 F. Supp. 770, 774-75 (W.D. Tenn. 2010) (dismissing claims against airline holding company for failing to plead facts explaining its role in accident).

Plaintiffs further failed to properly serve Frontier Holdings and Frontier Management. The original Complaint was served on Frontier Holdings and Frontier Management by delivering the summons and complaint to Shannon Muir, Sr. Manager, Corporate Contracts and Licensing for Frontier – *the airline*. Docs. 6, 7. Ms. Muir, however, is not an employee, officer, registered agent, or managing agent for either company. Movants' Appx., p. 3 – Muir Decl. at ¶ 7. The registered agent for both of these entities is CSC. *Id.* at ¶ 6. Accordingly, service was improper. *See Brand Q, Inc. v. All About Uniforms, Inc.*, No. 22-CV-01423-WJM-MDB, 2022 WL 14155979, at *2 (D. Colo. Oct. 24, 2022); *see also Cavanaugh v. Roland Corp.,* No. 22-CV-02944-NYW-NRN, 2023 WL 2355924, at *3 (D. Colo. Feb. 16, 2023) (service on subsidiary is improper service on parent).[5]

## CONCLUSION

For the reasons set forth above, Frontier requests an Order: (1) compelling Plaintiffs to arbitrate their claims; (2) dismissing the Class Action as Plaintiffs waived any right to bring such claims; (3) dismissing the causes of action as preempted by federal law; and (4) dismissing all the claims as they are not otherwise cognizable in law or fact.

---

[5] Nor may Plaintiffs rely on the filing of the Amended Complaint as service of process because service of the original Complaint was improper. *See Employee Painters' Trust v. Ethan Enterprises, Inc.*, 480 F.3d 993, 995–96 (9th Cir. 2007) ("[A]n amended complaint can often be served in the same manner as any other pleading *if* the original complaint is properly served *and* the defendants appeared in the first instance.").

Respectfully submitted January 9, 2024.

                              HOLLAND & KNIGHT LLP

                              */s/ Anna Day*
                              Anna Day
                              1801 California Street, Suite 5000
                              Denver, CO  80202
                              Telephone:  (303) 974-6642
                              Facsimile:  (303) 974.6659
                              Email:  anna.day@klaw.com

                              *Attorney for Defendants Frontier Airlines, Inc.,*
                              *Frontier Airlines Holdings, Inc., and Frontier*
                              *Airlines Management, Inc.*

**CERTIFICATE OF SERVICE**

   I hereby certify that on this 9th day of January, 2024, a true and correct copy of the foregoing was filed via CM/ECF and served electronically through CM/ECF on the following:

Blake Garrett Abbott
Paul J. Doolitte
Poulin Willey Anastopoulo, LLC
32 Ann Street
Charleston, SC 29403
Email: blake@akimlawfirm.com
   paul.doolittle@poulinwilley.com

*Attorneys for Plaintiffs*

              /s/ Anna S. Day
              Anna S. Day