**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:23-cv-02093-RMR-KAS

JERIYMA HARTSFIELD, SIMON GEBRU, MARK GRAHAM,
DAKOTA HELM, MARLON GOSA, DOMINIQUE GUTIERREZ,
MISTY MCKINNEY, and CHRIS KLINE, individually and on behalf
of others similarly situated,

    Plaintiff,

v.

FRONTIER AIRLINES, INC., FRONTIER AIRLINES
HOLDINGS, INC., FRONTIER AIRLINES MANAGEMENT,
INC., and INDIGO PARTNERS, LLC,

    Defendants.

---

**INDIGO PARTNERS LLC'S MOTION TO DISMISS PLAINTIFF'S CLASS
ACTION COMPLAINT PURSUANT TO RULE 12(B)(2) AND 12(B)(6)**

---

Defendant Indigo Partners LLC ("Indigo") respectfully submits this motion to dismiss all claims brought by Plaintiffs Jeriyma Hartsfield, Simon Gebru, Mark Graham, Dakota Helm, Marlon Gosa, Dominique Gutierrez, Misty McKinney and Chris Kline ("Plaintiffs") in their First Amended Class Action Complaint ("Amended Complaint"), pursuant to Fed. R. Civ. P. 12(b)(2) and 12(b)(6).

**CERTIFICATE OF CONFERRAL**

In accordance with RMR Civ. Practice Standard 7.1(B), on December 18, 2023, Indigo's counsel conferred with Plaintiffs' counsel regarding the instant Motion, including each basis for dismissal. Plaintiffs' counsel advised that their clients oppose the relief requested herein, and believe the Amended Complaint is sufficient in all aspects at issue.

**PRELIMINARY STATEMENT**

Plaintiffs' purported class action, seeking injunctive relief and damages, arises from their respective purchases of a GoWild! Pass ("Pass")[1] from Defendant Frontier Airlines, Inc. ("Frontier") that Plaintiffs claim was useless and inoperable. Rather than bring their claims solely against Frontier – the air carrier with which they contracted and that issued the Pass, Plaintiffs name Indigo and two other non-airline companies that have nothing whatsoever to do with their alleged inability to use their Passes. Specifically, Plaintiffs have sued Frontier Airlines Holdings, Inc.[2] ("Frontier Holdings"), a holding company that wholly owns Frontier, and Frontier Airlines Management, Inc. ("Frontier Management"), an inactive Delaware corporation that has no assets and does not conduct any business (Defendants Frontier, Frontier Holdings, and Frontier Management are collectively referred to as the "Frontier Defendants"). Indigo is not a shareholder nor parent company of any of the Frontier Defendants. Further, neither Frontier Holdings nor

---

[1] The Amended Complaint refers to the Pass as an "All You Can Fly Pass." Am. Compl., Doc. 27, at ¶ 1. They are sold under the GoWild! Pass.

[2] The correct name for "Frontier Airlines Holding, Inc." is "Frontier Airlines Holdings, Inc."

Frontier Management is involved in Frontier's flight operations or Pass programs. Plaintiffs nonetheless collectively refer to Indigo and these entities along with Frontier as "Defendants" without providing any detailed facts to support the elements of each cause of action as they pertain to each Defendant.

Plaintiffs notably fail to provide factual grounds to support personal jurisdiction over Indigo. Indeed, Plaintiffs recognize that Indigo is a Nevada corporation with headquarters in Arizona, negating any basis for general jurisdiction as it is clear Indigo is not "at home" in Colorado. As grounds for specific jurisdiction, Plaintiffs simply state that Indigo conducts "substantial business in this judicial district," is the "parent company of other co-defendants," and is "registered to do business" in Colorado. Such vague and cursory statements, however, fall far short of the factual allegations necessary to demonstrate "purposeful conduct" with the forum necessary to support specific jurisdiction. Accordingly, Indigo must be dismissed for lack of personal jurisdiction.

Nor do Plaintiffs articulate any facts to support a viable claim against Indigo. Indigo is not an air carrier and does not design, advertise or sell tickets for air transportation. Indigo also does not enter into contracts or communicate with Plaintiffs. Only Frontier, as the airline, would engage in such conduct. Accordingly, Plaintiffs fail to state a claim against Indigo and any claims against Indigo therefore should be dismissed.

**FACTUAL BACKGROUND**

The Amended Complaint arises from Plaintiffs' alleged inability to use their Passes on Frontier flights because Frontier's booking system allegedly was "inoperable" and the available dates displayed were limited to the year 1904. Doc. 27 at ¶¶ 16-17. Plaintiffs contend, without any factual support, that Indigo along with the other Frontier Defendants created a Pass program that denies Plaintiffs their ability to use their Passes. *Id.* at ¶ 8. Plaintiffs attribute any culpable conduct

by Indigo simply based on vague allegations that Indigo is a "wealthy private equity fund" that is the "parent company" of Frontier Airlines and owns other "low-budget" airlines. *Id.* at ¶¶ 5, 34.

As Plaintiffs acknowledge, Indigo is a Nevada limited liability company, with its principal place of business in Phoenix, Arizona. *Id.* at ¶ 30; *see* Movant's Appx., p. 2 – Declaration of Kenneth Klingler ("Klingler Decl."), at ¶ 3.  It is a private equity firm that focuses on investments in the airline industry. *Id.* at ¶ 2. Indigo does not maintain an office or employ any employees in Colorado.  *Id.* at p. 3, ¶ 6. Indigo does not own real property in Colorado.  *Id*. at ¶ 9.  Indigo is not registered to do business in Colorado nor does it have a registered agent for service of process in the state.  *Id.* at ¶¶ 5, 7.  Indigo is not an air carrier, does not operate flights, and does not advertise or sell tickets or program passes to airline customers. *Id.* at p. 2, ¶ 4. Furthermore, Indigo does not own any shares in Frontier Group Holdings, Inc., which is the entity that wholly owns Defendant Frontier Airline Holdings, Inc., which is the entity that wholly owns Defendant Frontier Airlines, Inc. *Id.* at p. 3, ¶ 11. Finally, Indigo is not the parent company of any of the Frontier Defendants or Frontier Group Holdings, Inc. *Id.* at ¶ 12.

## LEGAL STANDARDS

### A.     The Standard Of Review Under Fed. R. Civ. P. 12(b)(2)

Plaintiff bears the burden of establishing personal jurisdiction.  *See Fed. Deposit Ins. Corp. v. Oaklawn Apartments*, 959 F.2d 170, 174 (10th Cir. 1992). The court, however, has discretion to decide whether the facts regarding jurisdiction should be determined by reference to affidavits, by a pretrial evidentiary hearing, or a trial on the merits. *Id.* "When a motion to dismiss for lack of jurisdiction is decided on the basis of affidavits and other written materials, the plaintiff need only make a prima facie showing." *Id.* "The 'well pled facts' of the complaint must be accepted as true if uncontroverted by the defendant's affidavits, and factual disputes at this initial stage must be resolved in the plaintiff's favor when the parties present conflicting affidavits." *Id.*

### B. The Standard Of Review Under Fed. R. Civ. P. 12(b)(6)

Under Rule 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In deciding a Rule 12(b)(6) motion, the court must "accept as true all well-pleaded factual allegations ... and view these allegations in the light most favorable to the plaintiff." *Casanova v. Ulibarri*, 595 F.3d 1120, 1124 (10th Cir. 2010). A plaintiff may not, however, rely on mere labels or conclusions, "and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Rather, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009); *see also Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (explaining that the allegations must be sufficient to nudge a plaintiff's claims "across the line from conceivable to plausible"). To state a claim that is plausible on its face, a complaint must "sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed." *Forest Guardians v. Forsgren*, 478 F.3d 1149, 1160 (10th Cir. 2007).

## ARGUMENT

### I. THE COURT LACKS PERSONAL JURISDICTION OVER INDIGO

#### A. Plaintiffs' Conclusory Jurisdictional Allegations Are Woefully Inadequate

"To obtain personal jurisdiction over a nonresident defendant, the plaintiff must show that jurisdiction is legitimate under the laws of the forum state and that the exercise of jurisdiction does not offend the due process clause of the Fourteenth Amendment." *Lumen Tech. Serv. Grp., LLC v. CEC Group LLC*, No. 23-cv-00253-NYW-KAS, 2023 WL 5822503 at *2 (D. Colo. Sept. 8, 2023) (quoting *Benton v. Cameco Corp.*, 375 F.3d 1070, 1075 (10th Cir. 2004)). Plaintiffs must allege sufficient facts to support personal jurisdiction over a nonresident defendant. *Daimler AG*

*v. Bauman*, 571 U.S. 117, 127 (2014). Cursory allegations that a defendant transacts business in the state is insufficient. *See Oaster v. Robertson*, 173 F. Supp. 3d 1150, 1163 (D. Colo. 2016).

Colorado's long-arm statute confers personal jurisdiction to the extent that doing so is consistent with due process. "[T]o exercise jurisdiction in harmony with due process, defendants must have 'minimum contacts' with the forum state, such that having to defend a lawsuit there would not 'offend traditional notions of fair play and substantial justice.'" *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.,* 514 F.3d. 1063, 1070 (10th Cir. 2008) (citations omitted). Personal jurisdiction can be acquired through either general ("all-purpose") jurisdiction or specific ("conduct-linked") jurisdiction. *Lumen Tech*., 2023 WL 5822503 at *2 (citing *Bristol-Myers Squibb Co. v. Superior Ct. of Cal*., 582 U.S. 255, 262 (2017)).

Plaintiffs allege there is personal jurisdiction over Indigo based on its purported conduct of "substantial business in this district," its alleged role as a "parent company of other co-defendants," and its registration to do business in the state. Doc. 27 at ¶ 12. None of these unsupported (and inaccurate) allegations sufficiently meets the pleadings standards under *Iqbal* and *Twombly.*

As noted, conclusory and unsupported statements that a company does business in the state are insufficient. *See Oaster*, *supra.* Nor may jurisdiction be based on bare allegations of a parent-subsidiary relationship, particularly where, as here, Indigo is not a shareholder or parent company of any Frontier Defendant. *See, e.g.*, *SGI Air Holdings LLC v. Novartis Int'l AG*, 192 F. Supp. 2d 1195, 1199 (D. Colo. 2002) (finding that a holding company's ownership of stock in a subsidiary does not "support an agency relationship, or consequently, personal jurisdiction"). Furthermore, Indigo is not registered to do business in Colorado, but even if it were, such registration would not confer personal jurisdiction based on consent. *See Lumen Tech*, 2023 WL 5822503 at *3-11

(conducting lengthy analysis to conclude that no express or implied consent to jurisdiction could be found under Colorado's registration statute). Accordingly, this Court should find as a matter of law that Plaintiff has inadequately pled facts to establish personal jurisdiction over Indigo.[3]

### B. The Court Lacks General Jurisdiction Over Indigo

"A court may assert general jurisdiction over foreign corporations to hear any and all claims against them when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *BNSF Ry. Co. v. Tyrell*, 137 S. Ct. 1549, 1558 (2017) (citing *Daimler*, 571 U.S. at 127) (quoting *Goodyear Dunlop Tire Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). The "paradigm" forums in which a corporate defendant is "at home" are the corporation's place of incorporation and its principal place of business. *Id.*[4]

Indigo's connections, if any, with Colorado do not create general jurisdiction. Indigo is a private equity firm incorporated in Nevada with its principal place of business in Arizona. Doc. 27 at ¶ 30; Movant's Appx., p. 2 – Klingler Decl., at ¶¶ 2-3. It has no real property, offices or employees in Colorado. *Id.* at p. 3, ¶¶ 6, 9. It is not registered to do business in Colorado, has no bank accounts in Colorado, and does not pay taxes in Colorado. *Id.* at ¶¶ 5, 8, 10. As such, general jurisdiction does not exist. *See, e.g.*, *BNSF Ry.*, 137 S. Ct. at 1558 (finding court lacked personal jurisdiction over railroad even though it had over 2,000 miles of railroad track and more than 2,000 employees in Montana).

---

[3] This Court also should dismiss this case for improper venue under Rule 12(b)(3) for the same reasons, as the venue analysis is subsumed by the jurisdictional analysis, fully briefed herein.

[4] In an "exceptional case," a corporate defendant's operations in a forum "may be so substantial and of such a nature as to render the corporation at home in that State." *Daimler*, 571 U.S. at 139 n. 19 (citation omitted). No such allegations exist here.

### C.    The Court Lacks Specific Jurisdiction Over Indigo

"The inquiry whether a forum State may assert specific jurisdiction over a nonresident defendant 'focuses on the relationship among the defendant, the forum, and the litigation.'" *Walden v. Fiore*, 571 U.S. 277, 283-84 (2014). Specific jurisdiction is proper if: (1) the out-of-state defendant "purposefully directed" its activities at residents of the forum state, and (2) the plaintiff's alleged injuries "arise out of or relate to those activities." *XMission, L.C. v. Fluent LLC*, 955 F.3d 833, 840 (10th Cir. 2020). Here, neither prong is satisfied.

The Tenth Circuit has identified four types of frameworks that may be utilized when analyzing whether a non-resident defendant has "purposefully directed" activities at forum residents: (1) continuing relationships with the forum state; (2) harmful effects in the forum state; (3) deliberate exploitation of the forum state's market; and (4) stream-of-commerce. *See Old Republic Ins. Co. v. Cont'l Motors, Inc.*, 877 F.3d 895, 905 & 909 n. 21 (10th Cir. 2017). Because Indigo did not contract with Plaintiffs (nor any other Frontier customers in Colorado or elsewhere), Indigo has no "continuing relationships and obligations with citizens of" Colorado that implicate their claims. *Id.* at 905. As such, this framework does not apply. *Id*. The "harmful effects" test also does not apply because Plaintiffs can point to no "intentional conduct [by Indigo that] targets and has substantial harmful effects" in the state. *Id.* at 907.

Under the market exploitation framework, a defendant's actions must be more than "random, isolated, or fortuitous." *Keeton v. Hustler Magazine, Inc*., 465 U.S. 770, 781 (1984). Rather, the defendant must have "continuously and deliberately exploited the … market" in a manner specific to the plaintiff's claims before it can "reasonably anticipate being hauled into court." *Id*. Similarly, under the stream-of-commerce theory, a plaintiff must show that the defendant specifically targeted the state with its efforts. *Cf. Fischer v. BMW of N. Am., LLC*, 376 F. Supp. 3d 1178, 1186 (D. Colo. 2019) (creation of a nationwide distribution system is insufficient

- 7 -

to demonstrate minimum contacts). Again, Indigo is not a shareholder or parent company of Frontier or any holding entity with ownership of Frontier; it does not distribute products in Colorado, and therefore, this framework is inapplicable as well.

Indigo is not the air carrier or the party contracting with Plaintiffs, all of whom reside *outside the state*. *See Shrader v. Biddinger*, 633 F.3d 1235, 1241 (10th Cir. 2011) (courts must "look to indications that a defendant deliberately directed its message at an audience in the forum state and intended harm to the plaintiff occurring primarily or particularly in the forum state"). Accordingly, Plaintiffs do not meet this prong.

Plaintiffs also cannot satisfy the "arising out of" prong because their claims do not arise out of or relate to any alleged conducted of Indigo in the state. For this prong, the relevant consideration is "whether the plaintiff can establish that the claimed injury resulted from the defendant's forum-related activities." *Newsome v. Gallacher*, 722 F.3d 1257, 1271 (10th Cir. 2013). The claims here arise from non-residents' alleged purchases and inability to use a travel Pass purchased *from Frontier* – they have nothing to do with Indigo. Similarly, Plaintiffs cannot rely on any purported "parent/subsidiary" structure because Indigo is not a shareholder or parent company of any Frontier Defendant – and, in any event, such an argument would be insufficient for personal jurisdiction. *See, e.g.*, *Stuart v. Petzl Am. Inc.*, No. 1:23-cv-00595-CNS-SKC, 2023 WL 5310143 (D. Colo. Aug. 17, 2023) (rejecting argument that parent company's contacts suffice for personal jurisdiction over subsidiary); *SGI Air Holdings*, 192 F. Supp. 2d at 1199 (holding company's ownership of stock in a subsidiary does not "support an agency relationship, or consequently, personal jurisdiction").

## II.   PLAINTIFFS' CLAIMS ARE FACIALLY DEFICIENT

Alternatively, Plaintiffs' claims fail as a matter of law as they fail to meet the elements of each cause of action as they pertain to Indigo.

### A. Plaintiffs' Negligence Claim Fails Because Indigo Had No Duty To Plaintiffs

Any negligence claim requires a duty that has been breached by the defendant. Here, Indigo had no duty to provide an operable Pass, and could not in any event breach such a duty as it did not design, produce, market or sell the Pass to Plaintiff. Again, Indigo is a private equity firm – not an air carrier. *See, e.g., Malaga v. Abdulmutallab,* 903 F. Supp. 2d 270, 273 (S.D. N.Y. 2012) (dismissing claim against holding company of airline); *Glass v. Northwest Airlines, Inc.,* 686 F. Supp. 770, 774-75 (W.D. Tenn. 2010) (dismissing claims against airline holding company because plaintiff failed to plead facts explaining its role in the accident).

Moreover, Plaintiffs' claims sounding in tort must be dismissed pursuant to the economic loss rule. Plaintiffs purport to allege a breach of contract claim, at the heart of which are Plaintiffs' allegations that Frontier breached the contract by failing to provide unlimited flights. *See, e.g.,* Doc. 27 at ¶ 125. "[A] party suffering only economic loss from the breach of an express or implied contractual duty may not assert a tort claim for such a breach absent an independent duty of care under tort law." *BRW, Inc. v. Dufficy & Sons, Inc.*, 99 P.3d 66 (Colo. 2004). Frontier's obligations regarding the Pass program arise under the Terms & Conditions ("T&C") of the Pass program (and Plaintiffs indeed allege a breach of contract claim) – not any independent duty of care under tort law. Accordingly, Plaintiffs' tort claims against Indigo must be dismissed.

### B. Indigo Did Not Design, Produce, Market Or Sell Plaintiffs' Passes Nor Make Representations About Them

Plaintiffs admit Indigo is a private equity firm, as discussed above. This begs the question of how Indigo could have made any representations to Plaintiffs regarding the operability of a Pass which it does not design, produce, market, or sell. Plaintiffs have made no factual allegations whatsoever regarding Indigo's specific role in the selling of the Pass (and, indeed, they cannot).

*See Glass*, 686 F. Supp. at 774-75 (dismissing claims against airline holding company for failing to plead facts explaining its role in accident).

### C.    Indigo Did Not Benefit From The Sales Of The Passes

Plaintiffs' claims for unjust enrichment fail as a matter of law because Plaintiffs must sufficiently allege that Indigo received money for inoperable Passes. The Passes, however, were purchased from Frontier, the airline – not Indigo. Accordingly, no money was received by Indigo. The Passes were intended to be used on Frontier flights. *See, e.g.*, Doc. 27 at ¶ 84. Additionally, under Colorado law, unjust enrichment cannot be pursued if an express contract exists regarding the same subject matter, and thus is duplicative of the breach of contract claim. *Kiosk Inform. Sys., Inc. v. Cole Kepro Int'l, LLC*, No. 23-CV-00352, 2023 WL 4269409, *10 (D. Colo. June 29, 2023) ("A claim for unjust enrichment may not be asserted if there is a valid contract covering the subject matter of the alleged obligation to pay.").

### D.    Plaintiffs' Breach Of Warranty Claims Fail

Plaintiffs' warranty claims must be dismissed because Indigo simply did not make or sell the Passes at issue, and therefore could not have provided any warranty. In any event, those claims are barred by Frontier's T&C, which Plaintiffs agreed to when they enrolled in the Pass Program. *See* Declaration of Myriah Monteneri ("Monteneri Decl."), attached as **Exhibit 2** to the Frontier Defendants' Motion to Dismiss, at Ex. D (T&C) at ¶ 19.

### E.    Plaintiffs' Breach Of Contract Claim Fails

Plaintiffs purport to bring a claim for breach of contract, alleging that Defendants subjected themselves to a contractual obligation through alleged "marketing, advertisements, and promises" to provide Plaintiffs "with unlimited flights in exchange for the purchase price of [the Pass]." Doc. 27 at ¶ 123. Plaintiffs claim Defendants breached this obligation by failing to "provide unlimited flights as included in the Passes." *Id.* at ¶ 125. However, the actual contract in place *is not* with

Indigo; rather it is between Plaintiffs and Frontier – the terms of which are stated in the T&C. To state a claim for breach of contract, a plaintiff must allege: (1) the existence of a contract; (2) performance by the plaintiff or some justification for nonperformance; (3) failure to perform the contract by the defendant; and (4) resulting damages to the plaintiff. *Western Distributing Co. v. Diodosio*, 841 P.2d 1053, 1058 (Colo. 1992).

Specifically, Plaintiffs have failed to establish that Indigo is a party to any contract that obligated them to provide flights to Plaintiffs. This is precisely because Indigo, as Plaintiffs acknowledge, is not an air carrier and therefore not a party to any contract with Plaintiffs. For this reason alone, Plaintiffs' breach of contract claim must fail. *See Snyder v. ACORD Corporation*, 2016 WL 192270, *12 (D. Colo. Jan. 15, 2016) (breach of contract fails where "Plaintiffs have not identified any provisions of the [contracts] or explained how Defendants breached them").

In any event, the express terms of the T&C (i.e., the contract in place between Plaintiffs and Frontier) expressly refute any breach *by any* Defendant. To that end, the T&C does not guarantee the availability of air transportation services or that flights will be available for booking. *See* Monteneri Decl. at Ex. D (T&C) at ¶¶ 12(b)(1-2), 18(a). Furthermore, the T&C provides that passes "become available for booking the day before flight departure for domestic travel and ten (10) days before flight departure for international travel." *Id.* at ¶ 12(b)(5). Plaintiffs notably do not allege that they attempted to book flights the day before their desired travel dates domestically or within ten days of their desired travel dates internationally.

E. **Plaintiffs' Fraud And Misrepresentation Claims Are Not Pled With Specificity**

As Plaintiffs are well aware, Indigo is a private equity firm. It does not manufacture or sell products such that a claim based on strict product liability misrepresentation can be asserted against it. Furthermore, Plaintiffs' misrepresentation and fraud claims must be dismissed because

- 11 -

they do not satisfy the heightened pleading standard of Fed. R. Civ. P. 9(b), which requires Plaintiffs to plead with particularity that Indigo made false statements upon which they reasonably relied. *See Dean v. Wright Medical Tech., Inc.*, 593 F. Supp. 3d 1086, 1096 (D. Colo. 2022). Plaintiffs have wholly failed to do so here and, thus, their fraud claims must be dismissed.

**IV.   TO THE EXTENT PLAINTIFFS ATTRIBUTE FRONTIER'S CONDUCT TO INDIGO, PLAINTIFFS MUST ARBITRATE THEIR CLAIMS, HAVE WAIVED ANY CLASS ACTION, AND THEIR CLAIMS ARE FEDERALLY PREEMPTED**

**A.   Plaintiffs Agreed To Arbitrate Their Claims And Waived Any Class Action**

Under the Federal Arbitration Act, "[c]ourts 'must rigorously' enforce arbitration agreements according to their terms." *Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 230 (2013). Arbitration agreements are presumptively valid, irrevocable, and enforceable. *See Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1621 (2018) (citing 9 U.S.C. § 2); *see also In re Cox Enterprises,* 835 F.3d 1195, 1201 (10th Cir. 2016). A court must either stay or dismiss a lawsuit and compel the parties to arbitration upon a showing of two things: (1) that a valid arbitration agreements exists; and (2) that the dispute falls within the scope of those identified in the arbitration agreement. *See Frazier v. W. Union Co.*, 377 F. Supp. 3d 1248, 1257 (D. Colo. 2019).

Plaintiffs agreed to and are bound by Frontier's T&C, which governs all aspects of Frontier's obligations under the Pass Program and the rights of the parties. More specifically, in the process of enrolling in the Pass Program and prior to completing their purchases, Plaintiffs clicked a button which explicitly indicated that they agreed to the T&C of the Pass Program. *See* Monteneri Decl. at ¶ 5. The hyperlink to the T&C is in bold and underlined font, and Plaintiffs could not complete their purchases unless they clicked a button expressly indicating their consent to the T&C. *Id.* Additionally, upon completing their purchases, Frontier sent Plaintiffs an email confirming their enrollment, which expressly stated that participation in the program is subject to

Frontier's T&C. *Id.* at ¶ 7. Plaintiffs could not have purchased their Passes unless they agreed to the T&C. Accordingly, Plaintiffs are bound by the T&C. *See Vernon v. Qwest Communications Intern., Inc.*, 857 F. Supp. 2d 1135, 1151 (D. Colo. 2012) (enforcing arbitration agreement where plaintiffs clicked a box accepting terms and conditions containing an arbitration provision and received a welcome letter informing them of same).

Under the T&C of the Pass Program, Plaintiffs agreed that "[a]ny dispute" in connection with the Frontier Miles, which includes the related Pass Program, would be resolved by arbitration in Denver. Monteneri Decl. at Ex. D (T&C) at ¶ 20(m). Additionally, Plaintiffs agreed that "[a]ny case brought under the[] Program Rules may be pursued only in a party's individual capacity and not as a plaintiff or class member in any purported class or representative proceeding." *Id.* Courts consistently enforce these agreements and find the ability to bring a class action waived. *See, e.g.*, *Roman v. Spirit Airlines, Inc.*, No. 20-13599, 2021 WL 4317 318, at *1-2 (11th Cir. 2021) (enforcing class action waiver language in airline's contract of carriage and dismissing action); *Bombin v. Southwest Airlines Co.*, 2023 WL 5832166, *1, 11–12 (E.D. Pa. Sept. 7, 2023) (same). *See also Roman v. Spirit Airlines, Inc.*, 482 F. Supp. 3d 1304, 1311 (S.D. Fla. 2020) (holding that enforceability of class action waiver "should be resolved [at the pre-discovery stage] by way of a motion to dismiss").

  **B.**  **Plaintiffs' Claims Are Federally Preempted By The Airline Deregulation Act**

To the extent that Frontier's actions are somehow attributed to Indigo, Plaintiffs' claims also are federally preempted by the ADA, which contains an express preemption clause preventing states from enacting or enforcing laws that "relate to" an airlines' "prices," "routes" or "services." 49 U.S.C. § 41713(b)(1).  Here, Plaintiffs' claims have a connection to all three as they arise from their alleged inability to use a Pass that provided access to certain flights at a reduced price of

- 13 -

$0.01. *See Am. Airlines, Inc. v. Wolens*, 513 U.S. 219, 223 (1995) (ADA preempted fraud and consumer protection claims arising from changes to airline's frequent flier program).

By challenging Frontier's design, advertising, and sale of the Pass, Plaintiffs' claims plainly impact Frontier's Pass program—a benefit where airlines routinely compete—and runs counter to the ADA's purpose. *See Nw., Inc. v. Ginsberg*, U.S. 273, 288 (2014) (recognizing that airlines have competing loyalty programs and customers dissatisfied with one program may enroll in a more favorable rival program). There is no doubt consumers compare customer loyalty programs and related discounts that airlines offer when passengers make their flight arrangements. Allowing Plaintiffs to proceed with their state law claims would frustrate the forces of competition and also serve as a "means to guide and police [Frontier's] marketing practices" with respect to its Pass Programs—a result prohibited by *Wolens*. 513 U.S. at 228.

Such consumer protection claims also fall under the exclusive purview of the Department of Transportation ("DOT"), which has plenary authority to "investigate and decide whether an air carrier ... has been or is engaged in an unfair or deceptive practice." 49 U.S.C. § 41712; *see Bailey v. Rocky Mountain Holdings, LLC*, 889 F.3d 1259, 1269 (11th Cir. 2018) (DOT has power to enjoin such practices). In fact, Congress gave DOT explicit authority to investigate complaints related to frequent flier programs.[5] *See Ginsberg*, 572 U.S. at 289.

## CONCLUSION

For the reasons set forth above, Indigo respectfully requests that the Court dismiss this action pursuant to Fed. R. Civ. P. 12(b)(2) and 12(b)(6).

---

[5] *See also* https://www.transportation.gov/individuals/aviation-consumer-protection/frequent-flyer-programs#:~:text=Filing%20a%20Complaint,regarding%20airlines'%20frequent%20flyer%20programs.

Dated:  January 9, 2024.

                                          Respectfully submitted,

                                          HOLLAND & KNIGHT LLP

                                          */s/ Anna Day*
                                          Anna Day
                                          1801 California Street, Suite 5000
                                          Denver, CO  80202
                                          Phone (303) 974-6642 Fax:  (303) 974.6659
                                          Email:  anna.day@klaw.com

                                          *Attorney for Defendant INDIGO PARTNERS LLC*

- 16 -

## CERTIFICATE OF SERVICE

I hereby certify that on this 9th day of January, 2024, a true and correct copy of the foregoing was filed via CM/ECF and served electronically through CM/ECF on the following:

Blake Garrett Abbott
Paul J. Doolitte
Poulin Willey Anastopoulo, LLC
32 Ann Street
Charleston, SC 29403
Email: blake@akimlawfirm.com
paul.doolittle@poulinwilley.com

*Attorneys for Plaintiffs*

/s/ Anna S. Day
Anna S. Day