**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:23-cv-02093-RMR-KAS

JERIYMA HARTSFIELD, SIMON GEBRU, MARK GRAHAM,
DAKOTA HELM, MARLON GOSA, DOMINIQUE GUTIERREZ,
MISTY MCKINNEY, and CHRIS KLINE, individually and on
behalf of others similarly situated,

  Plaintiffs,

v.

FRONTIER AIRLINES, INC., FRONTIER AIRLINES
HOLDING, INC., FRONTIER AIRLINES MANAGEMENT,
INC., and INDIGO PARTNERS, LLC,

  Defendants.

---

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO COMPEL
ARBITRATION, DISMISS CLASS ACTION COMPLAINT PURSUANT TO
RULE 12(B)(5) AND (6), AND STAY PENDING RESOLUTION OF PRE-
ANSWER MOTIONS**

---

1

Plaintiffs Jeriyma Hartsfield, Simon Gebru, Mark Graham, Dakota Helm, Marlon Gosa, Dominique Gutierrez, Misty McKinney, and Chris Kline ("Plaintiffs"), on behalf of themselves and all others similarly situated, filed this action against Defendant Frontier Airlines, Inc., ("Frontier") over their misrepresentations and contractual breaches regarding Frontier's "GoWild! All-You-Can-Fly-Pass" ("GoWild Pass" or "Pass").

## PRELIMINARY STATEMENT

This action arises from Plaintiffs' enrollment in Frontier's GoWild! Pass Program (the "Pass Program"), which gives a passholder the ability to book a ticket at an airfare of $0.01 on select flights operated by Frontier with their GoWild! Pass ("Pass"). Plaintiffs' claims are based on their alleged inability to book flights under the Pass Program. Defendant relies on a hidden and unclear Terms and Conditions ("T&C") that govern the Pass Program, however, there are significant faults in their policies and this case should continue. The Airline Deregulation Act ("ADA") also does not bar Plaintiffs' claims given that the breach that occurred did not involve pricing, routes, or service, but the inability to book a flight at all. Defendant now attempts to hide any wrong doing behind a T&C agreement that was never presented to Plaintiffs or other users outside of links to other pages not required to be viewed during the registration process of the Pass or explicitly signed off on outside of a simple "Join Now" button, which is far from acceptable in this situation. Contrary to Defendant's position, Plaintiffs did in fact dismiss the non-airline support Defendants after thorough research was conducted when it was brought to their attention during the discussed meet and confer. *See* Def. Mtn. at 2. *See also* Dkt. No. 37.

## FACTUAL BACKGROUND

A. **The Parties**

2

Plaintiffs are residents of South Carolina, Georgia, Ohio, Virginia, Illinois, Massachusetts, and Texas. Doc. 27 at ¶¶ 14, 20-26. Plaintiffs purchased who purchased Defendants' "GoWild! All-You-Can-Fly-Pass" that were manufactured, marketed, labeled, distributed, and sold by Defendants.. *Id*. at ¶ 1. Plaintiffs claim is that Defendants engaged in what amounts to a "fraudulent scam" to entice them to purchase the Pass, which they claim they were unable to use. *Id*. at ¶¶ 8, 16. This all arises because Frontier's booking system is inoperable when the Pass is attempted to be used. Specifically, when Plaintiff Hartsfield attempted to use her Pass, the relevant booking year for available dates to use the Pass displays as the year 1904, and cannot be corrected. *Id.* at ¶ 16-18. Similarly, while attempting to use the Pass, Plaintiff Geru was never able to book a return flight and found that entire cities were blocked out after his GoWild Pass purchase. *Id*. at ¶ 20. Similar issues can be found throughout Plaintiffs' Amended Complaint for all other named Plaintiffs as well. *Id*. at ¶¶ 21-26.

Defendant Frontier Airlines, Inc. is a Colorado based airline, with its principal place of business at 4545 Airport Way, Denver, CO 80239. *Id*. at ¶ 27. The remaining corporate Defendant's were dismissed pursuant to the Joint Stipulation filed on January 26, 2024. Dkt. No. 37.

  **B.**  **Plaintiffs' Purchase of the Pass and Inability to Use**

All named Plaintiffs to this action contracted with Frontier airlines at various points for the Pass that they offered. *See generally* Dkt. 27. When Plaintiffs purchased the pass they were required to agree to terms that were never shown to them. In fact, in their own papers, Defendant even admits this point in stating that Plaintiffs were "provided links to the T&C" but never the actual terms, or require the terms be reviewed in full as part of the registration process for this As

3

stated above, Plaintiff Hartsfield attempted to use her Pass, the relevant booking year for available dates to use the Pass displays as the year 1904, and cannot be corrected. *Id.* at ¶ 16-18.

## LEGAL STANDARD

Under the Federal Arbitration Act, "[c]ourts 'must rigorously' enforce arbitration agreements according to their terms." *Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 230 (2013) (citation omitted); *see Sanchez v. Nitro-Lift Techs., LLC*, 762 F.3d 1139, 1145–46 (10th Cir. 2014). Arbitration agreements are presumptively valid, irrevocable, and enforceable, and courts are directed by congress to treat them as such. *See Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1621 (2018). If a party's allegations "touch matters" covered by the relevant arbitration agreement, then those claims must be arbitrated. *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 625 n. 13 (1985) (Blackmun, J.). There exists "a liberal policy favoring arbitration agreements." *Lewis*, 138 S. Ct. at 1621. A court must either stay or dismiss a lawsuit and compel the parties to arbitration upon a showing of two things: (1) that a valid arbitration agreement exists; and (2) that the dispute falls within the scope of those identified in the arbitration agreement. *See Frazier v. Western Union Company*, 377 F. Supp. 3d 1248, 1257 (D. Colo. 2019). Should a movant satisfy these requirements, arbitration is mandatory. Id.

A motion to dismiss under Rule 12(b)(5) challenges the delivery of a summons and complaint and the burden is on the plaintiff to make a prima facie showing that plaintiff properly served process. Pisani v. Ritz-Carlton Hotel Co., 2020 WL 6119796, at *2 (D. Colo. Aug. 24, 2020). When considering the adequacy of service of process, the court may consider affidavits and other documentary evidence. *Id.*

4

To survive a motion to dismiss under Rule 12(b)(6), the complaint must contain sufficient facts to state a claim that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While a court presumes plaintiff's factual allegations are true, the court need not accept conclusory allegations without supporting factual averments. Southern Disposal, Inc. v. Texas Waste, 161 F.3d 1259, 1262 (10th Cir. 1998). A motion to compel arbitration or to enforce a class action waiver should be determined at an early stage in the litigation on a motion to dismiss and before discovery begins. *See Roman v. Spirit Airlines, Inc.*, 482 F. Supp. 3d 1304, 1311 (S.D. Fla. 2020).

I.    **PLAINTIFFS DID NOT AGREE TO ARBITRATE THEIR CLAIMS**

   A.    **Plaintiffs Did Not Agree to Frontier's Terms &amp; Conditions**

Plaintiffs did not unequivocally agree to the Terms & Conditions, as Defendant suggests. In pertinent part, the layout and the process of accepting the Terms & Conditions does not give Plaintiff "reasonably conspicuous notice of all terms contained therein". *Grosvenor v. Qwest Corp.*, 854 F. Supp. 2d 1021, 1026 (D. Colo. 2012) (citing *Specht v. Netscape Commc'ns Corp.*, 306 F.3d 17 (2nd Cir. 2002) Further, "an offeree, regardless of apparent manifestation of his consent, is not bound by inconspicuous contractual provisions of which he is unaware, contained in a document whose contractual nature is not obvious." *Spect*, 306 F.3d at 30.

When signing up for Frontier's GoWild! Pass, Frontier provides a hyperlink which is titled "Terms & Conditions" at the bottom of a bulleted list above the "Join Now" button. Assent to these terms is NOT required by clicking any sort of checkbox, as Defendant suggests. Moreover, in order to view the Terms & Conditions, Plaintiff must leave the sign-up page and open another, separate window. Then, Plaintiff will see a section entitled "GoWild! Pass", which contains smaller sections all pertaining to the pass. There are several other sections relating to the

5

different available passes afterwards. Rather inconspicuously, the GoWild! Pass provisions are actually located in the center of a longer overall Terms and Conditions, which Plaintiffs would actually have to scroll up to in order to be aware of. Then, Defendant has placed the arbitration provision on the next to last line of the entire document. However, in order to ascertain the GoWild! Pass provisions themselves, the arbitration agreement, and the applicability of everything therein, Plaintiffs would have had to read the section the link takes them to, scroll all the way down to the bottom, then scroll back up to top of the entire document in order to fully understand what they were agreeing to. This does not in any way constitute reasonably conspicuous notice.

### B.  The Arbitration Clause is Unconscionable

Because Plaintiffs did not agree to the overall Terms &amp; Conditions, they could not have agreed to the arbitration provision. In any event, however, the arbitration provision is unconscionable as a matter of law.

A strong federal policy favoring arbitration "is about treating arbitration contracts like all others, not about fostering arbitration" *Morgan v. Sundance, Inc.*, ⸺ U.S. ⸺, 142 S. Ct. 1708, 1713, 212 L.Ed.2d 753 (2022). Courts interpret arbitration agreements using state-law contract principles. *See, e.g., First Options of Chicago, Inc. v. Kaplan*, 514 U.S. at 944, 115 S.Ct. 1920 (1995). Colorado courts consider several factors in determining whether a contractual provision is unconscionable, including, (1) the use of a standardized agreement executed by parties of unequal bargaining power; (2) the lack of opportunity for the customer to read or become familiar with the document before signing it; (3) the use of fine print in the portion of the contract containing the provision in question; (4) the absence of evidence that the provision was commercially reasonable or should reasonably have been anticipated; (5) the terms of the

6

contract, including substantive fairness; (6) the relationship of the parties, including factors of assent, unfair surprise, and notice; and (7) the circumstances surrounding the formation of the contract, including setting, purpose, and effect. *Davis v. M.L.G. Corp.*, 712 P.2d 985, 991 (Colo.1986).

Here, the parties are of clearly unequal bargaining power, as Plaintiffs have no opportunity to negotiate terms, it is simply a "take it or leave it" basis. Also, Plaintiffs lack opportunity to become familiar with the document because of the format, as discussed above. The convoluted presentation of the agreement does not make it sufficiently clear to purchasers what they are agreeing to, and thus they are not able to become familiar with it. Additionally, the location of the arbitration provision buried in the next to last line of a lengthy document is a clear deception tactic.

There is also no evidence the provision is commercially reasonable or should be anticipated by the everyday consumer. The terms of the arbitration provision, requiring Plaintiffs to go to an outside arbitration service rather than the courts is not substantively fair, as it would force Plaintiffs to incur additional costs to adjudicate claims that are better suited for courts, and would inevitably end up back in the court regardless. There are issues with the relationship between the parties as discussed in the breach of contract section of this brief, in that there is no mutual assent to this contract. Finally, the effect of the arbitration provision is unconscionable, as it would preclude Plaintiffs from adequately adjudicating their claims and it would fail to prevent Frontier from benefitting from a deceptive money-making scheme.

## II.     PLAINTIFFS CLAIMS FALL WITHIN THE *WOLENS* EXCEPTION TO ADA PREMPTION

Contrary to Defendant's position, the narrow exception in *Wolens* for a breach of contract claim that arises from "the airline's alleged breach of its own, self-imposed undertaking" does not apply here. *See American Airlines, Inc. v. Wolens*, 513 U.S. 219, 115 S. Ct. 817, 130 L.Ed.2d 715 (U.S. 1995). As the Court outlined in *Wolens*: "We do not read the ADA's preemption clause, however, to shelter airlines from suits alleging no violation of state-imposed obligations, but seeking recovery solely for the airline's alleged breach of its own, self-imposed undertakings. As persuasively argued by the United States, terms and conditions airlines offer and passengers accept are privately ordered obligations "and thus do not amount to a State's 'enact[ment] or enforce[ment] [of] any law, rule, regulation, standard, or other provision having the force and effect of law' within the meaning of [§] 1305(a)(1)." *See also Cipollone v. Liggett Group, Inc.,* 505 U.S. 504, 526, 112 S.Ct. 2608, 2612, 120 L.Ed.2d 407 (1992)( ("[A] common-law remedy for a contractual commitment voluntarily undertaken should not be regarded as a 'requirement ... imposed under State law' within the meaning of [Federal Cigarette Labeling and Advertising Act] § 5(b)."). It is clear that lawmakers indicated no intention to establish, simultaneously, a new administrative process for federal agency adjudication of private contract disputes. *Id*. But a breach of contract, without more, "does not amount to a cause of action cognizable under the [Consumer Fraud] Act and the Act should not apply to simple breach of contract claims." *Golembiewski v. Hallberg Ins. Agency, Inc.*, 262 Ill.App.3d 1082, 1093, 200 Ill.Dec. 113, 121, 635 N.E.2d 452, 460 (1st Dist.1994).

Here Plaintiffs allege a valid common law right to breach of contract that was specifically undertaken by the airline of it's own accord, and the dispute over that contract is ripe for decision at this Court currently. Therefore, this Court should rule that the ADA does not exempt Plaintiffs' breach of contract claims.

### III.   PLAINTIFFS' CLAIMS ARE VALID UNDER FEDERAL AND STATE LAW

#### A.   Plaintiffs' Breach of Contract Claim Should Survive

Plaintiffs allege that Frontier subjected itself to a contractual obligation through its "marketing, advertisements, and promises" to provide Plaintiffs "with unlimited flights in exchange for the purchase price of [the Pass]." Doc. 27 at ¶¶ 121-123. Plaintiffs claim Defendants breached this obligation by failing to "provide unlimited flights as included in the Passes." *Id.* at ¶ 125. Contrary to Defendant's position, the T&C is not the entirety of the contract.

All this Court requires to satisfy the 12(b)(6) standard for a breach of contract claim is "(1) the existence of a contract, (2) performance by the plaintiff or some justification for nonperformance, (3) failure to perform the contract by the defendant, and (4) resulting damages to the plaintiff" *See W. Distrib. Co. v. Diodosio*, 841 P.2d 1053, 1058 (Colo. 1992). Here Plaintiff clearly alleges that a contract was established through the marketing materials and sale of the Pass. Doc. 27 at ¶¶ 121-122. This was a contract taken on individually by Defendant for the purpose of this pass. *Id.* at ¶ 122. Plaintiffs satisfied their obligations to the contract by completing the enrollment information and paying for the Pass. *Id.* at ¶ 124. However, before any ticket was booked, or prices for tickets even provided to Plaintiff, Defendant simply did not allow Plaintiffs to book a flight, which resulted in damages to Plaintiffs. *Id.* at ¶¶ 125-126. All elements of breach of contract under Federal and State laws are satisfied facially by the complaint here, contrary to Defendant's position.

Further, the T&C Defendant relies on here is not dispositive of the contract claims, given the lack of meeting of the minds to the terms at the time of contracting. "The formation of a contract requires a bargain in which there is a manifestation of mutual assent to the exchange and

9

a consideration." *Pierce v. St. Vrain Valley Sch. Dist. RE–1J*, 981 P.2d 600, 603 (Colo. 1999). In assessing whether a party assented to an agreement's terms, "the threshold issue" is whether the consumer had "reasonable notice, either actual or constructive, of the terms of the putative agreement" and whether the "consumer manifest[ed] assent to those terms." *Vernon*, 857 F. Supp. 2d at 1149 (applying Colorado law). When determining whether a contract has been formed, the Court must assess "whether the contractual terms were 'reasonably conspicuous' and whether [the] alleged assent to them was 'unambiguous.' " *Grosvenor v. Qwest Corp.*, 854 F. Supp. 2d 1021, 1026 (D. Colo. 2012) (citing *Specht v. Netscape Commc'ns Corp.*, 306 F.3d 17 (2nd Cir. 2002) (applying Colorado contract law and noting that Colorado law "bears some similarity to the California law assessed in *Specht*")). Further, "When a party is unaware of a term of a contract because it was hidden or obscured, there can be no presumption that there was a meeting of the minds as to such term." *Grosvenor*, 854 F. Supp. 2d at 1026.

Here, as Defendant makes clear, the Terms and Conditions on which they rely were never fully presented to Plaintiffs outside of a single hyperlink to another page entirely. Doc. 30 at ¶¶ 12-13. In fact, reviewing the Terms and Conditions in full is not a requirement of Defendant to signup for the Pass, meaning Plaintiffs were governed by something that Defendant did not enforce review of, instead hiding and obscuring the language on another page that forces Plaintiffs and similar consumers to leave the sign up page to fully understand the contract they are agreeing to. As the holding in *Grosvenor* makes clear, when a party is unaware of a contract because it is hidden or obscured, as it was here, there can be no presumption that there was a meeting of the minds as to such term. For this reason, the lack of meeting of the minds to the T&C terms means they do not govern this case and Plaintiffs' claims for breach of contract should survive.

### B. Plaintiffs' Tort Claims Are Not Barred

Contrary to Defendant's position, the economic loss rule does not bar Plaintiffs' tort claims. Broadly speaking, the economic loss rule is intended to maintain the boundary between contract law and tort law. Although these two areas of law traditionally occupy discrete spheres of legal practice, the distinction between the two blurs. This becomes problematic when, as in this case, a commercial buyer seeks to use a tort theory to recover damages for a mislead contract. A tort theory based on the dangerousness of conduct was considered more appropriate and more adaptable than a contract theory because the policy reasons courts were supplying to justify the imposition of liability go far beyond any conventional contract notions. See id. at 692. The California Supreme Court led the way with its decision in *Greenman v. Yuba Power Products, Inc.*, 59 Cal.2d 57, 27 Cal.Rptr. 697, 377 P.2d 897, 900 (1963)(holding a manufacturer strictly liable in tort for injury to plaintiff caused by defective power tool).

Here, that is exactly what Plaintiff is asking the Court to review. Yes, Plaintiff does make claims of breach of contract that supports the claims here, but the focus of Plaintiffs' tort claims is the marketing and selling of the Pass. *See generally* Doc. 27. Plaintiffs outline in their complaint the marketing and promotion that Defendant used to sell these Passes, and this case makes clear that many of those marketing points are simply not true or misconstrued to deem them effectively inoperable. Here, Plaintiffs seek to recover tort claims for the marketing and promotional materials Defendant used toward Plaintiffs and other consumers in the inducement into the contract, not the contract language itself. For this reason, the economic loss rule would not bar these claims, as they do not require an analysis of the contract terms, simply the sale of the Pass prior to entering the contract with Defendant.

### C. Plaintiffs' Unjust Enrichment Claims is Not Barred

11

Plaintiffs' unjust enrichment claim is properly plead in the alternative, which is allowable under Colorado and Federal law. *See United Water and Sanitation District v. Geo-Con, Inc.*, 488 F.Supp.3d 1052. (Holding that "dismissal of alternative claims is not warranted where the existence of a valid express contract governing the parties' relationship is disputed.") *See also Cintas Corp. v. Jupiter Aluminum Corp.*, 2020 WL 4584298, at *1-2 (N.D. Ind. Aug. 10, 2020); *Slemmer v. McGlaughlin Spray Foam Insulation, Inc.*, 955 F. Supp. 2d 452, 460 (E.D. Penn. 2013)(denying motion to dismiss alternative unjust enrichment claim where the parties had not admitted that a "valid contract" existed between them).

Here Defendant does not, and cannot, deny that the terms of the contract and what was agreed to are in dispute, thus giving rise to these claims and that Plaintiff has validly plead unjust enrichment. As Plaintiffs make clear in the above sections, it is disputed whether the additional terms and conditions even govern the contract, and given this is what Defendant's entire argument rests on, the contract is clearly in dispute. Until the Court issues an order confirming that a valid contract exists between Defendant and Plaintiffs governing the monies spent by Plaintiffs, the contract is still in dispute and Plaintiffs unjust enrichment is a valid claim in the alternative to the breach of contract claims they allege.

### D. Plaintiffs' Breach of Warranty Claims Are Not Barred

Given the questionable applicability of the T&C Defendant relies upon, Plaintiffs' breach of warranty claims should survive. Under Colorado law, "[t]o state a claim for breach of an express warranty, the plaintiff must prove (1) the existence of a warranty, (2) breach of the warranty, (3) 'the breach proximately caused the losses claimed as damages,' and (4) the defendant received timely notice of the breach." Haynes Mech. Sys., Inc. v. Bluon Energy, LLC, No. 18-cv-03004 KLM, 2021 WL 3128652, at *6 (D. Colo. July 23, 2021) (citing Platt v.

Winnebago Indus., Inc., 960 F.3d 1264, 1271 (10th Cir. 2020)); see Colo. Rev. Stat. § 4–2–607(3)(a) ("Where a tender has been accepted: (a) [t]he buyer must within a reasonable time after he discovers or should have discovered any breach, notify the seller of breach or be barred from any remedy ....").

Here Plaintiffs complaint facially satisfies the requirements of breach of contract under Colorado law. Plaintiffs describe the terms of the warranty were created, rather expressly or implied, through Defendant's advertising and marketing. Doc. 27 at ¶¶ 94-95. Plaintiff further outlines that Defendant breached this warranty by providing Passes that were inoperable and could not provide such promised flights after plaintiff had relied on these representations. *Id.* at ¶¶ 96-98. Defendant had timely notice of the breach and this breach ultimately resulted in cognizable damages to Plaintiffs and consumers. *Id*. at ¶¶ 99-101.

As stated above, the terms and conditions upon which Defendant rests their arguments is tentative at best, given their implications in the argument are currently debated in these papers and would likely remain in debate should this case be allowed to continue forward. For this reason, Plaintiffs' warranty claims are not barred and should be allowed to survive at this stage in the litigation.

### III. PLAINTIFFS' ARGUMENTS MAKE CLEAR A STAY OF DISCOVERY IS IMPROPER

Given the favorable law in Plaintiffs' briefing as outlined above, a stay of discovery in this case is not warranted. Stays of discovery are generally disfavored in this District. *See Wells v. Dish Network, LLC*, 2011 WL 2516390 at *1 (D. Colo. June 22, 2011). To determine whether a stay of discovery is appropriate under a specific case's circumstances, courts analyze and weigh the five factors outlined in *String Cheese Incident*. 2006 WL 894955, at *2 (D. Colo. Mar. 30, 2006). These factors are: (1) the interest of the plaintiff; (2) the burden on Defendants if

13

discovery is not stayed; (3) the convenience of the court; (4) the interests of non-parties; and (5) the public interest generally. *Id*. In this case, contrary to Defendant's position, all five factors weigh against granting a stay of discovery.

As to factor one, the interest of Plaintiffs is clearly to see this case progress to a just resolution as quickly as possible. Numerous courts have recognized that "discovery becomes more difficult with the passage of time." *Sattar v. Holder*, No. 07-cv-02698, 2011 WL 2415738, at *4 (D. Colo. Jun. 16, 2011) (citing cases). Staying discovery pending a ruling on Defendant's motions "could substantially delay the ultimate resolution of the matter, with adverse consequences such as a decrease in evidentiary quality and witness availability." *Jackson*, 2008 WL 5233787, at *1. This is particularly important, when as here, the behavior in question is still happening by Defendant, particularly the selling of these Passes. Plaintiff has a significant interest in proceeding with discovery and is likely to suffer serious prejudice in the form of stale or missing evidence, unavailable and destroyed documents, increasingly unavailable or uninformed witnesses, unmanageably short discovery deadlines, among other things. Because a prolonged discovery stay would seriously impair Plaintiff's ability to gather evidence in support of the merits of their claims and class certification, this factor weighs heavily in favor of denying Defendant's motion.

As to factor two, this also weighs heavily in favor of Plaintiff. Courts in this District have repeatedly held the fact that discovery is "burdensome" is not a sufficient reason to grant a motion to stay discovery. Indeed, defendants "always are burdened when they are sued, whether the case ultimately is dismissed; summary judgment is granted; the case is settled; or a trial occurs. That is the consequence of our judicial system and the rules of civil procedure." *Chavez*,

2007 WL 683973 at *1. A pending dispositive motion alone is **not sufficient** to justify a stay of discovery. See *Jackson*, 2008 WL 5233787, at *1 (emphasis added).

As to the third factor, this case already pends in this court and is clearly convenient to allow the parties to begin discovery. Courts are generally inconvenienced by stays in discovery because they disrupt the docket and create scheduling uncertainty. *Lester v. Gene Exp., Inc.*, 2010 WL 743555, at *2 (D. Colo. Mar. 2, 2010) (J. Mix). Given that it is unlikely that Defendant's pending motions will fully dispose of all of Plaintiff's claims or class allegations, a stay will not serve the convenience of the Court and judicial economy. Courts are inconvenienced by an ill-advised stay because the delay in prosecuting the case which results from the imposition of a stay makes the Court's docket less predictable and, hence, less manageable.

To the fourth and fifth factors, which weigh public and third-party interest in this case, there is none. Plaintiffs seek to represent purchasers of the GoWild! Pass that, like them, have been deprived the benefit of their bargain. No other parties besides Plaintiff and Frontier Airlines Inc., have an interest in the resolution of this matter. Further, public interest factors favor the continuation of discovery and prompt resolution of this action. Where, as here, Defendant cannot identify any specific third party or public interests that would be benefitted by a stay, there is a "strong interest held by the public in general regarding the prompt and efficient handling of all litigation." *Sanaah*, 2009 WL 980383 at *1.

## **CONCLUSION**

For the reasons set forth above, Plaintiffs request this court issue an Order denying Defendant's Motion to Dismiss and Compel Arbitration and further deny Defendant's Motion to Stay in this current action.

Respectfully Submitted February 20, 2024

*/s/ Blake G. Abbott*
Blake G. Abbott
Paul J. Doolittle
POULIN | WILLEY ANASTOPOULO, LLC
32 Ann Street
Charleston, SC 29403
Tel: (803) 222-2222
Email: blake.abbott@poulinwilley.com
paul.doolittle@poulinwilley.com
cmad@poulinwilley.com

16

**CERTIFICATE OF SERVICE**

I hereby certify that on this 20th day of February, 2024, a true and correct copy of the foregoing was filed via CM/ECF and served electronically through CM/ECF on the following:

Anna S. Day
HOLLAND & KNIGHT LLP
1801 California Street, Suite 5000
Denver, Colorado 80202
Telephone: 303-974-6660
Facsimile; 304-974-6659
Email: anna.day@hklaw.com

*Attorney for Defendant*

                                                                        */s/Blake G. Abbott*