IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:23-cv-02093-RMR-KAS

JERIYMA HARTSFIELD, SIMON GEBRU, MARK GRAHAM, DAKOTA HELM, MARLON GOSA, DOMINIQUE GUTIERREZ, MISTY MCKINNEY, and CHRIS KLINE, individually and on behalf of others similarly situated,

    Plaintiffs,

v.

FRONTIER AIRLINES, INC., FRONTIER AIRLINES HOLDING, INC., FRONTIER AIRLINES MANAGEMENT, INC., and INDIGO PARTNERS, LLC,

    Defendants.

**FRONTIER AIRLINES, INC.'S REPLY IN SUPPORT OF ITS
MOTION TO COMPEL ARBITRATION AND DISMISS
CLASS ACTION COMPLAINT PURSUANT TO RULE 12(B)(6)**

Defendant Frontier Airlines, Inc. ("Frontier") submits this reply in support of its motion to compel arbitration and dismiss Plaintiffs' Class Action Amended Complaint pursuant to Rule 12(b)(6) ("Motion," Doc. 30),[1] and states as follows in support:

**INTRODUCTION**

Plaintiffs' response to the Motion ("Response," Doc. 43) disingenuously contends Plaintiffs did not agree to the Terms and Conditions ("T&C") in Frontier's GoWild! Pass Program ("Pass Program") despite their explicit confirmation to accept the T&C when clicking the "Join

---

[1] Because Plaintiffs dismissed their claims with prejudice against Defendants Frontier Airlines Holdings, Inc., Frontier Airlines Management, Inc., and Indigo Partners, LLC (Doc. 37), Frontier's motion to dismiss is now based solely on Rule 12(b)(6).

Now" button in order to enroll in the program.  Plaintiffs, in fact, do not dispute that at numerous points in the enrollment process, they were informed of the T&C and could not have received their Pass without expressly agreeing to the T&C.  Rather, they argue that the T&C related to the Pass Program were "hidden" and failed to provide "conspicuous notice" of, *inter alia*, the arbitration clause and class action waiver – arguments rejected by courts that routinely enforce these provisions in circumstances far more attenuated.

Nor do Plaintiffs challenge that their non-contract claims are preempted by the Airline Deregulation Act, 49 U.S.C. § 41713 ("ADA"), making no effort to whatsoever explain why the ADA does not result in dismissal of all of their non-breach of contract claims.  Instead, Plaintiffs argue their breach of contract claim falls within the *Wolens* exception to preemption, but then fail to identify the contract term that Frontier breached and improperly rely on outside marketing terms to support such a claim. Additionally, Plaintiffs fail to state a viable contract claim as the T&C preclude any such claim, and even their erroneous reliance on marketing materials as the basis of the contract results in Frontier's T&C governing and precluding any breach of contract claim.  Likewise, Plaintiffs fail to meet the pleading requirements for any other state law claims, all of which are preempted and fail under the T&C as well.

## ARGUMENTS

**I. PLAINTIFFS AGREED TO ARBITRATE THEIR CLAIMS AND WAIVED ANY RIGHT TO BRING A CLASS ACTION**

**A.    Plaintiffs Indisputedly Agreed to the T&C**

Plaintiffs' effort to avoid their unequivocal acceptance of Frontier's T&C is unavailing. Specifically, Plaintiffs rely on *Grosvenor v. Qwest Corp.*, 854 F. Supp. 2d 1021, 1026 (D. Colo. 2012) to argue that the layout and the process of accepting Frontier's T&C did not provide

2

Plaintiffs with "reasonably conspicuous notice of all terms contained therein." But Plaintiffs' reliance is misplaced, as *Grosvenor* actually supports Frontier's position. In *Grosvenor*, to access the agreement at issue, plaintiff was required to: (1) install software; (2) use the software to navigate through several webpages to locate the applicable subscriber agreement from a list for review; and (3) return to the installation software to manifest assent by clicking "I Accept." *See id.* at 1027–28. This process was complicated, unlike Frontier's process (which does not require software installation or navigating through multiple webpages), and, yet, the *Grosvenor* Court found that this process indeed provided reasonably conspicuous notice and thus enforced the agreement at issue. *See id.* at 1030.

  Moreover, to the extent Plaintiffs attempt to argue that there is a significant difference between being required to click a "Join Now" button and being required to click a checkbox, this argument places form over substance. Regardless of whether Frontier requires its customers to click a "Join Now" button or a checkbox, Frontier conspicuously provides access to its T&C by providing a hyperlink in bold and an underlined font. Movants' Appx., p. 6 – Declaration of Myriah Monteneri ("Monteneri Decl."), Doc. 30-1, at ¶ 5, Ex. A (pp. 8–10). Plaintiffs could not complete their purchases *until they expressly indicate their consent to the T&C. Id.* As set forth in Frontier's Motion, the process of agreeing to Frontier's T&C is like the "hybrid arrangement" described in *Vernon v. Qwest Comms. Int'l, Inc.*, 857 F. Supp. 2d 1135, 1151 (D. Colo. 2012), where "the customer is told that consequences will necessarily flow from his assenting click and is also placed on notice of how or where to obtain a full understanding of those consequences." *Id.* at 1149-50. Here, absent consent by clicking the "Join Now" button, no purchase could take place. Plaintiffs further object that, in order to view the T&C, they were required to open the T&C in a

3

separate window. It is unclear from Plaintiffs' argument how this new window makes the T&C less conspicuous – they are literally opened from an underlined hyperlink into a new window. Nothing could be more conspicuous. Accordingly, Frontier provided reasonably conspicuous notice of its T&C and the terms set forth therein.[2]

### B. The Arbitration Clause is Enforceable

In an effort to avoid arbitration and faced with T&C which are enforceable, Plaintiffs have resorted to arguing that the arbitration clause contained therein is unconscionable. Plaintiffs bear the burden of establishing that the arbitration provision is unconscionable. *See id.* at 1157. Plaintiffs have failed to carry this burden. *See id.* at 1157–58. Specifically, Plaintiffs have failed to demonstrate that applying the seven factors laid out in *Davis v. M.L.G. Corp.* would render this provision unconscionable. *See Davis v. M.L.G. Corp.*, 712 P.2d 985, 991 (Colo. 1986).

With respect to the first *Davis* factor, Plaintiffs argue that the parties were not of equal bargaining strength. Yet, Plaintiffs fail to demonstrate that there was a "gross inequality" in the bargaining power or that the transaction involved the absence of meaningful choice. *See Gen. Steel Domestic Sales, LLC v. Rising Sun Missionary Church, Inc.*, No. 11-CV-001332-DME-CBS, 2012 WL 1801955 (D. Colo. May 17, 2012). This is because Plaintiffs had other choices – nothing required them to purchase tickets from Frontier. *See Davis*, 712 P.2d at 991.

Plaintiffs further contend that they "lack[ed] opportunity to become familiar with the document because of the format[.]" Resp. at 7. To the contrary, however, Plaintiffs had unlimited

---

[2] Plaintiffs' argument that they did not have to review the T&C "in full as part of the registration process" similarly fails. Resp. at 3. Regardless of whether Plaintiffs chose to review the T&C, Frontier conspicuously provided customers with access to its T&C and a sufficient opportunity to review the terms, and required that they expressly consent to the T&C in order to enroll in the Program. *See, e.g.*, *Vernon*, 857 F. Supp. 2d at 1151.

4

time to review the T&C of their purchase.  As pointed out by Plaintiffs, the hyperlink to the T&C opened in a separate page.  Once open, Plaintiffs had the option to read the T&C on their screen or even to print them out to review prior to proceeding with their purchase.  There is nothing convoluted about the presentation of the T&C and nothing that prevented Plaintiffs from becoming familiar with them. Moreover, there is nothing deceptive about the location of the arbitration provision.  It is not presented in smaller font than the rest of the T&C nor is it otherwise hidden away.  The bald claim that the location is deceptive is just that – a bald claim without any support.

Furthermore, Plaintiffs contend that there is no evidence that the provision is commercially reasonable and claim that the "terms of the arbitration provision, requiring Plaintiffs to go to an outside arbitration service rather than the courts is not substantively fair." Resp. at 7.  However, the burden lies with Plaintiffs to demonstrate that the provision is ***not*** commercially reasonable and they fail to meet this burden. *See Vernon*, 857 F. Supp. 2d at 1157. Moreover, to follow Plaintiffs' logic, ***all*** arbitration provisions which require the use of an outside arbitration service would be commercially unreasonable.  To read the provision in such a way is absurd.

Plaintiffs further contend that there is no mutual assent to the contract as a whole.  For the reasons addressed in the Motion and above, there was mutual consent and the contract is enforceable.  Finally, Plaintiffs contend that the *effect* of the arbitration provision is unconscionable because "it would preclude Plaintiffs from adequately adjudicating their claims." Resp. at 7.  Nothing in the arbitration provision precludes Plaintiffs from adequately adjudicating their claims.  It merely requires Plaintiffs, as they agreed, to adjudicate their claims in a different forum.  For these reasons, Plaintiffs have failed to carry their burden of demonstrating that the arbitration provision at issue meets the *Davis* factors.

## II. PLAINTIFFS CONCEDE THEIR NON-CONTRACT CLAIMS ARE PREEMPTED AND FAIL TO ARTICULATE A CONTRACT CLAIM THAT FALLS WITHIN THE *WOLENS* EXCEPTION

Plaintiffs' Response reflects a basic misunderstanding of express preemption under the ADA. The ADA is broadly construed to preempt all state law claims that relate to an airline "price, route or service" – only claims based on an airline's breach of "its own self-imposed undertakings" may survive preemption. *Am. Airlines, Inc. v. Wolens*, 513 U.S. 219, 228 (1995). In their preliminary statement (Resp. at 2), Plaintiffs nonetheless contend that their state law clams – all of which are based on the alleged inability to access Frontier's flight *service*s at a set *price* – do not involve a "price, route or service" by Frontier.

It is undisputed, however, that Plaintiffs are complaining about their ability to book Frontier's flight *services* at a *price* of $0.01 on select flights. Resp. at 2. Courts consistently hold that such claims relate to an airline's "price" or "service" and are preempted by the ADA. *See, e.g.*, *Northwest, Inc. v. Ginsberg*, 572 U.S. 273, 284 (2014) (holding state law claims connected to airline frequent flier program preempted by ADA because they affected consumer's ability to access travel on certain flights at reduced price or for free); *Wolens*, 513 U.S. at 226 (same); *Lagen v. United Continental Holdings, Inc.*, 774 F.3d 1124, 1128 (7th Cir. 2014) (enforcing frequent flier program's terms and recognizing that state law claims of fraud or misleading advertising practice would be preempted by the ADA); *Chalom v. United Airlines, Inc.*, No. 2:18-cv-12632, 2022 WL 1284720 (D. N.J. Apr. 27, 2022) (ADA preempted state common law claims for breach of duty of good faith, unjust enrichment, and quantum meruit as they were based on termination of plaintiff's frequent flier account, which directly affected an airline's prices and services); *Gordon v. United Cont'l Holding, Inc.*, 73 F. Supp. 3d 472 (D. N.J. 2014) (holding that plaintiff's unjust enrichment,

6

state consumer fraud, warranty statute, and breach of covenant of good faith and fair dealing claims arising from loyalty program are preempted by the ADA).

Indeed, Plaintiffs fail to cite to any cases to the contrary to challenge ADA preemption and make no attempt to distinguish or counter the U.S. Supreme Court authority in *Wolens* and *Ginsberg*. Plaintiffs, in fact, concede their non-breach of contract claims are all preempted, focusing only on whether they have a contract claim that falls within the narrow *Wolens* exception to preemption.[3]  Resp. at 8.  But, here too, this argument fails as they do not identify any contract term that was breached by Frontier, and instead their claims focus on marketing materials external to the parties' agreement.  In fact, by relying on such materials, Plaintiffs argue exactly what *Wolens* proscribed – they are seeking to "guide and police the marketing practices of the airlines," rather than "give effect to bargains offered by the airlines and accepted by airline customers." *Wolens*, 513 U.S. at 228.  Nor do they challenge or distinguish any of the cases cited by Frontier in refuting the application of the *Wolens* exception.[4]  *See Schneberger v. Air Evac EMS*, 749 Fed. App'x 670, 678 (10th Cir. 2018) (finding breach of contract claim preempted because it relied on concepts and terms outside the contract); *Alatortev v. JetBlue Airways, Inc.,* No. 3:17-04859-WHO, 2018 WL 784434, at *6-7 (N.D. Cal. Feb. 7, 2018) (same).

In sum, Plaintiffs plainly cannot avoid the fact that Frontier's T&C govern the contractual relationship between the parties.  Because their breach of contract claim relies on theories and statements outside those terms and beyond the airline's "self-imposed undertakings," it simply

---

[3] Plaintiffs confusingly state that the narrow exception recognized in *Wolens* for a breach of contract claim "does not apply here" but then proceed to argue that they are, in fact, asserting a "valid common law right to breach of contract" that should fall within the very narrow *Wolens* exception.  Resp. at 8.

[4] Plaintiffs oddly cite to an Illinois appellate court case, *Golembieski v. Hallberg Ins. Agency, Inc.*, 262 Ill. App. 3d 1082, 1083 (1st Dist. 1994), that has nothing to do with ADA preemption.  Resp. at 8.

does not fall within the *Wolens* exception and, like Plaintiffs' other state law claims, is preempted.

### III. PLAINTIFFS FAIL TO STATE ANY VIABLE CLAIM

#### A. Plaintiffs Fail to State a Claim for Breach of Contract (Count 7)

In yet another effort to avoid the binding T&C, Plaintiffs contend that "a contract was established through [unspecified] marketing materials and sale of the Pass." Resp. at 9. However, Frontier's marketing materials for the Pass Program do not constitute a binding contractual offer or promise. Advertisements "are not ordinarily intended or understood as offers to sell" absent unusually definite and explicit language, and Plaintiffs offer nothing to suggest the marketing materials here should fall within the limited exception to this rule. Restatement (Second) of Contracts § 26 (1981)a. More importantly, however, Frontier made clear in its marketing materials for the Pass Program that "[r]estrictions apply" and that participation in the Pass Program was subject to the T&C. *See, e.g.*, Movants' Appx., p. 6 – Monteneri Decl., Doc. 30-1, at Ex. A (pp. 8-10). Similarly, Plaintiffs had to agree to the T&C in order to enroll in the Pass Program. Movants' Appx., p. 6 – Monteneri Decl., at ¶¶ 4, 5. Thus, even if Plaintiffs are correct that the marketing materials and sale of the Pass constitute a contract (which they do not), the terms of this purported contract plainly include the T&C.

As Frontier established in its Motion, Plaintiffs fail to identify any actual provision of the T&C (or any other alleged portion of the contract) that Frontier purportedly breached. Mot. at 12-13. Indeed, the T&C expressly provide that Frontier does not guarantee the availability of air transportation services, that not all flights will be available for booking, that Frontier may not be held liable for any failure to complete a transaction, and that Pass Program tickets become available for booking the day before flight departure for domestic travel and ten days before flight departure

8

for international travel. *Id.* at 13. Thus, the T&C entirely refute Plaintiffs' assertion that Frontier breached the contract by allegedly failing to provide unlimited flights with the Pass Program. *See, e.g., Martin v. United Airlines, Inc.*, 727 Fed. Appx. 459, 462-63 (10th Cir. 2018) (affirming dismissal of breach of contract claims where airline's contract of carriage unambiguously required passenger to use its ticket credit within one year and finding such restrictions not unconscionable); *Gordon*, 73 F. Supp. 3d at 478–79 (holding that plaintiff failed to assert a viable breach of contract claim based on frequent flier program).

Plaintiffs also contend that the there was a "lack of meeting of the minds to the T&C," and therefore, such terms do not apply. Resp. at 9. As the basis for this challenge, Plaintiffs rely on the same arguments they make as to whether the arbitration clause within the T&C is enforceable. Because those arguments fail, as set forth above, so too does Plaintiffs' contention that there was no meeting of the minds as to the T&C.

### B.    The Economic Loss Rule Bars Plaintiffs' Tort Claims (Counts 1–2, 8–9)

Plaintiffs contend that the economic loss rule does not bar their tort claims, because such claims allegedly "focus" on "the marketing and selling of the Pass," and "not the contract language itself." Resp. at 11. Plaintiffs are incorrect. While the economic loss doctrine does not bar certain tort claims that "stem[ ] from a duty based in tort law independent of the contract," Plaintiffs fail to identify any duty independent of the contractual duties arising out of the T&C. *Mid-Century Ins. Co. v. HIVE Constr., Inc.*, 531 P.3d 427, 436 (Colo. 2024) (internal citation omitted). Instead, in relation to their tort claims, Plaintiffs claim that Frontier owed a "duty to provide operable Passes to consumers"—the very same duty Plaintiffs claim Frontier owed as part of their breach of contract claim. *Compare* Am. Compl., Doc. 27, at ¶ 59 *with id.* at ¶ 123. Further still, Plaintiffs'

9

own allegations make clear that they contend "a contract was established through the marketing materials and sale of the Pass." Resp. at 9; *see also* Am. Compl., Doc. 27, at ¶¶ 121-123. Thus, Plaintiffs cannot contend their tort claims arise from an independent duty of care under tort law, and therefore, the economic loss rule bars such claims.

Plaintiffs' misrepresentation and fraud claims must also be dismissed because they do not satisfy the heightened pleading standard of Rule 9(b), as set forth in Frontier's Motion. Mot. at 13-14. Plaintiffs failed to address this issue in their Response. As a result, the Court should deem Plaintiffs' fraud claims abandoned or the issue admitted. *See Schone v. Sodexo, Inc.*, No. 1:19-CV-02283-SKC, 2021 WL 915937, at *3 (D. Colo. Mar. 10, 2021).

### C. Plaintiffs' Unjust Enrichment Claim and Breach of Warranty Claims Are Barred and Otherwise Fail to State a Claim (Counts 3–6)

Plaintiffs do not contend that the contract upon which they base their breach of contract claim—the contract which also covers the subject matter of the alleged obligation to pay at issue in Plaintiffs' unjust enrichment claim—is invalid or unenforceable. Therefore, it is improper for Plaintiffs to plead both theories of recovery, and the unjust enrichment claim should be dismissed. *See Kiosk Info. Sys., Inc. v. Cole Kepro Int'l, LLC*, No. 23-CV-00352-GPG-KLM, 2023 WL 4269409, at *10 (D. Colo. June 29, 2023) (citing line of cases). In addition, because the T&C are a valid and binding contract, and explicitly disclaim the warranties at issue, Plaintiffs' breach of warranty claims are barred. The breach of warranty claims must also be dismissed, because, as set forth in the Motion, Plaintiffs failed to allege the existence of any express warranty. Mot. at 15.

### CONCLUSION

For the foregoing reasons, Frontier requests that the Court grant its Motion.

Dated: March 12, 2024

        HOLLAND & KNIGHT LLP

        */s/ Anna S. Day*
        Anna S. Day, #50725
        1801 California Street, Suite 5000
        Denver, Colorado 80202
        Telephone: 303.974.6660
        Facsimile: 303.974.6659
        Email: anna.day@hklaw.com

        *Attorney for Defendant Frontier Airlines, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on this 12th day of March, 2024, a true and correct copy of the foregoing was filed via CM/ECF and served electronically through CM/ECF on the following:

Blake Garrett Abbott
Paul J. Doolitte
Poulin Willey Anastopoulo, LLC
32 Ann Street
Charleston, SC 29403
Email: blake@akimlawfirm.com
paul.doolittle@poulinwilley.com

*Attorneys for Plaintiffs*

                                                            */s/ Anna S. Day*
                                                            Anna S. Day