IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 23-cv-02093-RMR-KAS

JERIYMA HARTSFIELD,
SIMON GEBRU,
MARK GRAHAM,
DAKOTA HELM,
MARLON GOSA,
DOMINIQUE GUTIERREZ,
MISTY MCKINNEY, and
CHRIS KLINE,
    individually and on behalf of others similarly situated,

    Plaintiffs,

v.

FRONTIER AIRLINES, INC.,

    Defendant.
_____

**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**
_____
**ENTERED BY MAGISTRATE JUDGE KATHRYN A. STARNELLA**

    This matter is before the Court on Defendant's[1] **Motion to Compel Arbitration and Dismiss Class Action Complaint Pursuant to Rule 12(b)(5) and (6)** [#30][2] (the "Motion"). Plaintiffs filed a Response [#43] in opposition to the Motion [#30], and Defendant filed a Reply [#44]. The Court has reviewed the briefs, the entire case file, and

---

[1] The Motion was filed on behalf of Defendant Frontier Airlines, Inc. and two subsequently dismissed entities, Frontier Airlines Holding, Inc. and Frontier Airlines Management, Inc. *See* Motion [#30] at 2; *see also Order for Dismissal* [#38].

[2] "[#30]" is an example of the convention the Court uses to identify the docket number assigned to a specific paper by the Court's case management and electronic case filing system (CM/ECF). This convention is used throughout this Recommendation.

the applicable law. For the reasons stated below, the Court respectfully **RECOMMENDS** that the Motion [#30] be **GRANTED** to the extent Defendant seeks to compel arbitration.[3]

## I. Background

This class action arises from Plaintiffs' enrollment in Defendant Frontier Airlines' GoWild! Pass Program (the "Pass Program"), a paid offering within Defendant's FRONTIER Miles Program. Plaintiffs, individually and as putative class representatives, allege that the Pass Program fraudulently relies on hidden and unclear Terms & Conditions ("T&C"), which prevented Plaintiffs from booking $0.01 flight tickets as advertised. *Motion* [#30] at 2;[4] *see also Am. Compl.* [#27].

When signing up for the Pass Program, Plaintiffs had to click "Join Now," confirming that they agreed to the T&C, which was hyperlinked above the "Join Now" button in bold and underlined font. *Motion* [#30] at 5; *Movants' App'x* [#30-1], Ex. A at 10. Additionally, the link to the T&C, which opens in another window when clicked, was presented at various points throughout the enrollment process, including in a confirmation email expressly stating that participation in the Pass Program is subject to the T&C. *Motion* [#30] at 5. The T&C's "Miscellaneous Provisions" include an arbitration clause as

---

[3] The Motion [#30] has been referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R. Civ. P. 72(b)(1), and D.C.COLO.LCivR 72.1(c)(3). *See* [#33]. The Court acknowledges a division among courts over whether motions to compel arbitration are dispositive for purposes of Magistrate Judge jurisdiction. *See Vernon v. Qwest Commc'ns Int'l, Inc.*, 857 F. Supp. 2d 1135, 1140-41 (D. Colo. 2012) (collecting cases and noting that "courts are divided on whether motions to compel arbitration are dispositive for purposes of 28 U.S.C. § 636(b)(1)"). Out of an abundance of caution, the undersigned issues a Recommendation on the Motion [#30]. *Accord Morse Elec., Inc. v. Conrad*, No. 22-cv-91-JWB-GLJ, 2023 WL 9283979, at *1 n.1 (E.D. Okla. Dec. 21, 2023) (acknowledging district court split and, "out of an abundance of caution," resolving a motion to compel arbitration by Recommendation rather than Order").

[4] The Court notes that the inclusion of a cover page in the Motion [#30] means that the blue, court-stamped page numbering does not match the brief's numbering. Where citing to the Motion [#30], the Court refers to the blue, court-stamped page numbers.

follows: "Any disputes in connection with *FRONTIER Miles* or these Program Rules shall be governed by Colorado law, exclusive of Colorado choice of law rules, and the Member agrees to resolve any dispute in connection with *FRONTIER Miles* arising between Member and Frontier by submission to arbitration in Denver County, State of Colorado, in accordance with the rules of JAMS under its Streamlined Arbitration Rules & Procedures then in effect. Any case brought under these Program Rules may be pursued only in a party's individual capacity and not as a plaintiff or class member in any purported class or representative proceeding." *Movants' App'x* [#30-1], Ex. D at 39 (emphasis in original).

Defendant moves to compel arbitration under the T&C's arbitration clause. *Motion* [#30] at 7-9. Defendant also moves to dismiss the claims based on the T&C's class action waiver, preemption by federal law, and facial deficiencies in the pleadings. *Id.* at 9-16. Plaintiffs argue that the arbitration clause is invalid because they never assented to the T&C. *Response* [#43] at 5. Specifically, Plaintiffs contend that the Pass Program's signup process did not provide reasonably conspicuous notice of the terms and conditions to which they agreed. *Id.* They also argue that the arbitration clause is unconscionable and therefore unenforceable. *Id.* at 6-7.[5]

---

[5] Defendant raises other arguments, such as preemption and failure to state a claim, but because the Court finds the arbitration clause to be valid and enforceable, it lacks jurisdiction to consider those arguments, and therefore declines to address them. *Motion* [#30] at 9-16; *see Smith v. Aliera Cos., Inc.*, 534 F. Supp. 3d 1345, 1353 (D. Colo. 2021) ("A valid, enforceable arbitration clause divests a trial court of jurisdiction over all issues that must be submitted to arbitration[.]") (citing *Hughley v. Rocky Mountain Health Maint. Org., Inc.*, 927 P.2d 1325, 1330 (Colo. 1996)).

## II. Analysis

**A.     Arbitration Clause**

Under the Federal Arbitration Act ("FAA"), "[c]ourts must 'rigorously enforce' arbitration agreements according to their terms." *Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 230 (2013) (citation omitted); *see Sanchez v. Nitro-Lift Techs., LLC*, 762 F.3d 1139, 1145-46 (10th Cir. 2014). The FAA "manifests a liberal federal policy favoring arbitration." *Comanche Indian Tribe v. 49, L.L.C.*, 391 F.3d 1129, 1131 (10th Cir. 2004) (internal citation and quotation marks omitted). A court must either stay or dismiss a lawsuit and compel the parties to arbitration upon a showing of two things: (1) that a valid, enforceable arbitration agreement exists; and (2) that the dispute falls within the scope of those identified in the arbitration agreement. *See Frazier v. W. Union Co.*, 377 F. Supp. 3d 1248, 1256-57 (D. Colo. 2019). Should a movant satisfy these requirements, arbitration is mandatory. *Id.*

While arbitration agreements are presumptively valid, irrevocable, and enforceable, *see Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1621 (2018), a dispute concerning the agreement's validity and enforceability causes "the presumption of arbitrability [to] fall[] away[.]" *Nesbitt v. FCNH, Inc.*, 74 F. Supp. 3d 1366, 1370 (D. Colo. 2014) (quoting *Riley Mfg. Co. v. Anchor Glass Container Corp.*, 157 F.3d 775, 779 (10th Cir. 1998)). Further, when determining whether the arbitration agreement is valid and enforceable, "[a] federal court must apply state contract law principles[.]" *Nesbitt*, 74 F. Supp. 3d at 1371 (citing *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)).[6]

---

[6] Here, Colorado law applies. "In a case in which jurisdiction is founded on diversity, [federal courts] apply the law of the forum state." *Essex Ins. Co. v. Vincent*, 52 F.3d 894, 896 (10th Cir.

4

First, the Court must determine whether a valid arbitration agreement exists. Plaintiffs contend that it does not, as they did not manifest consent to Defendant's T&C. *Response* [#43] at 5. Because there is a dispute as to the agreement's validity, the presumption of arbitrability falls away and the court must apply state contract law to determine validity and enforceability. *See Matzdorf v. Uponor, Inc.*, No. 21-cv-02057-RM-STV, 2022 WL 17547941, at *6 (D. Colo. Aug. 24, 2022). The relevant provision of the T&C states that "the [Pass] Member agrees to resolve any dispute in connection with *FRONTIER Miles* arising between Member and Frontier by submission to arbitration in Denver County, State of Colorado[.]" *Motion* [#30] at 8. However, Plaintiffs allege that the T&C and its arbitration clause were obscured and therefore failed to provide the "reasonably conspicuous notice" required to form a valid contract. *Response* [#43] at 5.

Plaintiffs cite *Grosvenor v. Qwest Corp.*, 854 F. Supp. 2d 1021 (D. Colo. 2012), arguing that Defendant failed to provide reasonable and conspicuous notice of the agreement's terms. However, the *Grosvenor* court found reasonable and conspicuous notice in a similar but more obscured agreement process. *Id.* at 1030. There,

> a user activating Qwest internet service would become aware of the terms of the agreement (and manifest assent) through the following steps: (i) the installation software directs the user to "Please read the terms . . . at www.quest.com/legal . . . that governs . . . the service(s) and equipment you ordered."; (ii) the user would navigate to the linked page (the "legal" page); (iii) the user, installing Qwest high-speed internet service, would then click on the "High–Speed Internet Subscriber Agreement" link on that page, thus being taken to yet another page; (iv) the user would review that subscriber agreement; and (v) the user would return to the installation software and manifest assent to the subscriber agreement by clicking "I Accept."

---

1995). The T&C also include a Colorado choice of law provision, and Plaintiffs do not challenge the applicability of Colorado law. *See Movants' App'x* [#30-1], Ex. D at 39 ("Any disputes in connection with FRONTIER Miles or these Program Rules shall be governed by Colorado law, exclusive of Colorado choice of law rules[.]"); *see also Response* [#43] at 6 (citing Colorado law).

*Id.* at 1028. Here, Plaintiffs merely had to click on a single bold and underlined link that directly opened the T&C in a new window, including its arbitration clause. *See Motion* [#30] at 5. Further, this link was provided multiple times after the initial sign-up, including in a confirmation email explicitly stating that the Pass Program is subject to the T&C. *Id.* As such, the Court finds that there was reasonable and conspicuous notice of the T&C, meaning Plaintiffs and Defendant entered into a valid arbitration agreement.

Next, the Court must determine whether the arbitration agreement is unconscionable or otherwise unenforceable. *Est. of Grimm v. Evans*, 251 P.3d 574, 576 (Colo. App. 2010) (concluding that "[t]he court was required to determine whether the arbitration provision was unconscionable"). Plaintiffs argue that the arbitration provision is unconscionable under Colorado contract law. *Response* [#43] at 6. The Colorado Supreme Court has established a multi-factor test to determine a contractual provision's conscionability. *See Davis v. M.L.G. Corp.*, 712 P.2d 985 (Colo. 1986). These factors include:

> (1) a standardized agreement executed by parties of unequal bargaining strength; (2) lack of opportunity to read or become familiar with the document before signing it; (3) use of fine print in the portion of the contract containing the provision; (4) absence of evidence that the provision was commercially reasonable or should reasonably have been anticipated; (5) the terms of the contract, including substantive unfairness; (6) the relationship of the parties, including factors of assent, unfair surprise and notice; and (7) all the circumstances surrounding the formation of the contract, including its commercial setting, purpose and effect.

*Id.* at 991 (numbering added) (citations omitted). During this analysis, "no one factor predominates and courts should examine each of the factors in conjunction with the entirety of the circumstances surrounding the transaction." *Bonanno v. Quizno's Franchise Co., LLC*, No. 06-cv-02358-CMA-KLM, 2009 WL 1068744, at *18 (D. Colo. Apr. 20, 2009).

Plaintiffs argue that their inability to negotiate the terms of the contract clearly demonstrates unequal bargaining strength. *Response* [#43] at 7. Further, they claim that "the convoluted presentation of the agreement" prevented them from reading or becoming familiar with it before signing. *Id.* Plaintiffs also assert a lack of evidence that the provision is commercially reasonable or should have been anticipated. *Id.* They also assert that the contractual terms are substantively unfair. *Id.* Finally, Plaintiffs argue that the provision's effect is unconscionable, as it would prevent them from adjudicating their claims in court and allow Defendant to continue benefitting from their "deceptive money-making scheme." *Id.*

The "arbitration of disputes is generally not unconscionable, and in fact is encouraged by Congress." *Spain v. Johnson*, --- F. Supp. 3d ----, No. 23-cv-00419-DDD-MEH, 2024 WL 907435, at *4 (D. Colo. Jan. 16, 2024). In *Spain*, the court found that even though Lyft's terms of service "are a standardized form, the terms were readily available to [plaintiffs], the use of arbitration is common and not unreasonable (in fact it is encouraged by Congress), and the mass nature of Lyft's service means that tens of thousands of other customers are able to review the same terms. The circumstances here simply don't support the idea that this provision was snuck in or forced upon an unsuspecting or unsophisticated customer with no other options." *Id.* (citing *Davis*, 712 P.2d at 991).

The Court finds that the same analysis applies here, and that Plaintiff's contrary arguments are unsupported. The Court agrees that the T&C are part of a standardized agreement and that the parties have unequal bargaining strength, but every other factor weighs in favor of enforceability: Plaintiffs had numerous opportunities to read the

7

document; the notice of Terms and Conditions was not in particularly fine print; Plaintiffs do not explain why it would be commercially unreasonable or unexpected for a pass program to have Terms and Conditions; the relevant term of the contract (i.e., the arbitration provision) is not substantively unfair; there is no unfair surprise or lack of notice of the T&C; and the circumstances surrounding the formation of the contract do not implicate broader concerns. *Davis*, 712 P.2d at 991; *Movants' App'x* [#30-1], Ex. D at 39. As such, the Court finds that Plaintiffs have failed to show that the arbitration agreement is unconscionable or otherwise unenforceable.

Finally, the Court must determine whether this dispute falls within the scope of the arbitration agreement. If a party's allegations "touch matters" covered by a valid arbitration agreement, those allegations must be arbitrated. *See Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 625 n.13 (1985) ("[I]nsofar as the allegations underlying the statutory claims touch matters covered by the enumerated articles, the Court of Appeals properly resolved any doubts in favor of arbitrability."). Here, the Court finds that Plaintiffs claims clearly fall within the umbrella of "any dispute in connection with *FRONTIER Miles* arising between Member and Frontier" that is laid out in the arbitration provision. *Motion* [#30] at 8. The allegations at the very least "touch matters" covered by this broad arbitration provision, as they are directly connected to an offering within Defendant's larger "FRONTIER Miles" program. Therefore, the Court finds that the dispute falls within the scope of the arbitration agreement and that Plaintiffs should be compelled to arbitrate their claims.

**B.     Class Action Waiver**

Defendant also moves to dismiss Plaintiffs' suit based on the T&C's class action waiver. *Motion* [#30] at 9; *Movants' App'x* [#30-1], Ex. D at 39, ¶ m. The T&C state that "[a]ny case brought under the[ ] Program Rules may be pursued only in a party's individual capacity and not as a plaintiff or class member in any purported class or representative proceeding." *Id.* As with all contractual provisions, class action waivers are presumed enforceable under Colorado law. *See Bonanno*, 2009 WL 1068744, at *17 ("Courts applying Colorado law start with the presumption that a contract clause is enforceable."). Therefore, Plaintiffs carry the burden of showing that the provision should not be enforced. *Id.* at *12 ("As the parties seeking to escape application of an unambiguous contractual provision, the burden rests on Plaintiffs to show that the Court should not enforce the class action bar provision."). Plaintiffs make no argument that this unambiguous class action waiver is unconscionable or otherwise unenforceable. *See generally Response* [#43]. Therefore, the Court finds that the class action waiver bars Plaintiffs from pursuing such claims. Accordingly, the Court recommends that Plaintiffs' Complaint [#27] be **dismissed without prejudice**.

**C.     Remaining Issues**

Because the Court finds that the arbitration clause and class action waiver require dismissal of this matter, it does not address the Motion's [#30] remaining arguments pertaining to preemption and pleading deficiencies. "A valid, enforceable arbitration clause divests a trial court of jurisdiction over all issues that must be submitted to arbitration[.]" *Smith v. Aliera Cos., Inc.*, 534 F. Supp. 3d 1345, 1353 (D. Colo. 2021) (citing *Hughley v. Rocky Mountain Health Maint. Org., Inc.*, 927 P.2d 1325, 1330 (Colo. 1996)).

### III. Conclusion

For the foregoing reasons,

IT IS HEREBY **RECOMMENDED** that the Motion [#30] be **GRANTED** to the extent that Defendant seeks an order compelling arbitration.

IT IS FURTHER **RECOMMENDED** that Plaintiffs' claims be **DISMISSED WITHOUT PREJUDICE**.

IT IS FURTHER **ORDERED** that any party may file objections **within 14 days** of service of this Recommendation. In relevant part, Fed. R. Civ. P. 72(b)(2) provides that, "within 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. 2121 E. 30th St.*, 73 F.3d 1057, 1060 (10th Cir. 1996). The objection must be "sufficiently specific to focus the district court's attention on the factual and legal issues that are truly in dispute." *Id.* "[A] party who fails to make a timely objection to the magistrate judge's findings and recommendations waives appellate review of both factual and legal questions." *Morales-Fernandez v. I.N.S.*, 418 F.3d 1116, 1119 (10th Cir. 2005).

Dated: June 14, 2024                                    BY THE COURT:

Kathryn A. Starnella
United States Magistrate Judge